# Exhibit A

Filing # 109473655 E-Filed 06/26/2020 02:44:47 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIDAL CIRCUIT

IN AND FOR PALM BEACH COUNTY, FLORIDA

STEPHEN ARPAIA, an individual,                       CASE NO.

     *Plaintiff,*

vs.

FOOTE MIELKE CHAVEZ & O'NEILL,
LLP, a foreign corporation

     *Defendant.*

## **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff, STEPHEN ARPAIA, for its Complaint against Defendant FOOTE MIELKE

CHAVEZ & O'NEILL, LLP, alleges and states as follows:

### **THE PARTIES, JURISDICTION AND VENUE**

1.    Plaintiff STEPHEN ARPAIA ("ARPAIA") is an individual with a primary address

at 11479 Sea Grass Circle, Boca Raton, FL, 33498, who at all times material hereto performed

legal consulting work from residence located in Palm Beach County, Florida.

2.    Defendant, FOOTE MIELKE CHAVEZ & O'NEILL, LLP ("FOOTE FIRM"" or

"Defendant") is a foreign corporation, who regularly practices law in the State of Florida, and who

regularly practices nationwide class action litigation representing class members from Florida, and

in this lawsuit contracted with ARPAIA to perform work at his business address in Florida and regularly sent communications to ARPAIA at the address in Palm Beach County, Florida.

3.     In all matters relevant herein, the FOOTE FIRM acted through its agents, primarily Robert Foote, Esquire ("Foote") and Kathleen Chavez, Esquire ("Chavez') who acted within the course and scope of their apparent authority as partners of the Defendant law firm.

4.     Defendants, specifically Foote and Chavez knew that Plaintiff was a Florida resident at all times relevant to this action and Plaintiff was a Florida resident during the entire time Plaintiff performed the services at issue in this Complaint.

5.     At all times relevant to this action, Plaintiff ARPAIA and Defendant the FOOTE FIRM were parties to a contract, negotiated over time via electronic mail, pursuant to which ARPAIA agreed to perform consulting services in support of the FOOTE FIRM's prosecution of a plaintiff's class action regarding Google AdWords and AdSense, that was eventually filed as In Re AdWords in the United States District Court for the Northern District of California, San Jose Division, at docket number 08-CV-3369-EJD. ("In Re AdWords") and the FOOTE FIRM agreed to compensate ARPAIA for the work being undertaken, which work pertained to the representation of a nationwide class of individuals.  See emails attached as Exhibits A, B, F.

6.     Actions giving rise to this matter, including the negotiation of the terms of the contract, research and other services performed by ARPAIA at the explicit direction of Defendant, telephone conferences with Defendant and partial payment for services rendered, occurred at Plaintiff's place of business at 11479 Sea Grass Circle, Boca Raton, Florida, 33498 in Palm Beach County Florida, as set forth herein, and ARPAIA seeks damages in excess of the jurisdictional $30,000.00 minimum, exclusive of interest, costs, and attorney's fees.

7.     Jurisdiction and venue are therefore proper in this Court.

## THE RELEVANT FACTS

8.      This action arises out of actions by the FOOTE FIRM in breaching the consulting agreement with ARPAIA.

9.      Plaintiff is a graduate of Cornell Law School, is licensed to practice by the State of New York, and is an expert with 20 years of legal experience in internet advertising, "parked domains" and internet advertising law.

10.     During that period, Plaintiff has  performed expert services and received compensation for legal consulting services from Class Action attorneys such as Defendants who contract with Plaintiff for Plaintiff's expertise on the internet, internet advertising and economic damage models for internet advertising damage claims.

11.     In or about 2007, Defendant entered into discussions with ARPAIA expressing an interest in his referral of possible class actions and payment for consulting services on internet advertising class action matters based upon their need for technical expertise in this area.

12.     Through a series of emails, ARPAIA and The FOOTE FIRM entered into an initial written agreement, attached as composite Exhibit A, B, F.

13.     On September 13, 2007, ARPAIA's counsel, Ed Larkin, Esquire, and Chavez, exchanged emails documenting the terms of their contractual relationship.  Mr. Larkin's email set forth the parameters of the agreement as previously discussed with Foote - that ARPAIA agreed to work for a fee encompassing the greater of (a) ten percent (10%) of all attorney's fees earned before any payment to any other attorneys for fees or disbursements; or (b) five percent (5%) of the first fifty percent (50%) of all attorney's fees, plus ARPAIA'S Lodestar – which was not set forth therein.  See Exhibit A.

14.     Lodestar by its legal definition is calculated by multiplying the amount of hours times the hourly amount the parties agreed upon.

15.   By response email dated September 13, 2007, Ms. Chavez responded affirmatively, writing "Steve is right about that fee arrangement and I think it is consistent with what Bob (Mr. Foote) originally said...." See Exhibit A.

16.   Chavez further explained that these terms were to "guarantee [ARPAIA] a minimum fee while giving him maximum opportunity to increase his share through the lodestar distribution...." See Exhibit A.

17.   Later by email dated, January 22, 2009, addressing hourly rate (lodestar) ARPAIA advised that his normal rate for this type of case was $1000 per hour, to which Foote responded the next day, that he would "put [ARPAIA] at [Foote's] rate which has been approved in the 7th circuit." See Exhibit B.

18.   At all times that Plaintiff worked for Defendants on the In Re AdWords litigation, Plaintiff did so under the terms outlined in this series of emails.

19.   At all times that Plaintiff worked for Defendant, the lawyers comprising the FOOTE FIRM were aware of this Agreement.

20.   At no time did Defendant object to the terms of this agreement or advise Plaintiff that the rates to be paid were to be anything less than as set forth therein.

21.   Beginning in 2008, Plaintiff began working with the FOOTE FIRM on an advertiser class action against Google, Inc. ("Google") based on parked domains and error pages which was filed on behalf of JIT Packaging. Plaintiff worked with the FOOTE FIRM researching the facts and law, and drafting the complaint JIT Packaging, Inc. v. Google, Inc., (the "JIT Action") which was filed in the Northern District of Illinois.

22.   As part of this research, ARPAIA recognized the need for a class-wide damages model and discovered, through diligent and time-consuming research, documents, such as a

Google White Paper on the Content Network and a published chapter in a book written by Google engineers which described Google's "smart pricing."   ARPAIA knew that these documents contained key concepts which would help the plaintiffs develop a class-wide damages model

23.   In 2008, the law firm of Schubert, Jonckheer & Kolbe, LLP ("The Schubert Firm") filed the Levitte v. Google case against Google alleging that Google had violated California's unfair and deceptive trade practices act by placing AdWords advertisers' ads on parked domains without the advertisers knowing about it.  Shortly thereafter, Foote filed the JIT Action in Illinois.

24.   All the actions against Google based on Parked Domains were consolidated in the Northern District of California under the single case refiled as In Re AdWords.

25.   On January 22, 2009, Foote informed Plaintiff via email that Foote had made a deal to be "co-lead" of In Re AdWords, with Robert Schubert, Esquire ("Schubert") of The Schubert Firm.  See Exhibit B.

26.   Through subsequent direction by Foote and Chavez, ARPAIA was instructed to communicate directly with Schubert and the attorneys in the Schubert Law Firm and the economic experts retained by the firms in undertaking actions on behalf of class plaintiffs in this representation.

27.   In addition, Foote also told Plaintiff that Schubert was using an economics expert, Dr. Stan Smith, who Foote had successfully used in past class actions.  Foote also reaffirmed to ARPAIA that he was "co-lead" because of a fee sharing agreement with Schubert where the two firms agreed to split the costs of the case and that Foote was providing certain expertise The Schubert Firm did not have.  Foote subsequently encouraged and arranged multiple telephone conferences between ARPAIA and Dr. Smith for purposes of addressing technical issues of mutual interest.

28.   ARPAIA did not learn until the fee petitions had been prepared in 2017 that Foote was not a co-lead counsel, but rather that the Schubert Firm was sole lead counsel on the In Re AdWords litigation.

29.   Throughout 2010, Plaintiff continued to receive email instructions from the FOOTE FIRM, as well as Schubert and The Schubert Firm regarding all aspects of the In Re AdWords matter, including substantive issues on the damage models ARPAIA was developing; the status of class action certification and requesting opinions on drafts of documents.  Members of the FOOTE FIRM were almost always copied in on these messages.

30.   Based upon everything he had been told by the FOOTE FIRM, as well as Schubert, APRAIA had no reason to differentiate between work requested by counsel for the FOOTE FIRM and work requested by Schubert, as they were co-lead counsel working toward a common goal for a joint client – the class.

31.   It was further explained to ARPAIA that neither THE FOOTE FIRM nor Schubert's firm had any significant experience in the Google AdWords advertising system and Google's AdSense System.  In contrast, Plaintiff had many years' experience working with the Google AdWords advertising system, Google's AdSense System and parked domain industry and is an expert in both.

32.   Acknowledging that expertise, ARPAIA advised Foote as early as his January 22, 2009 email, that he was accustomed to billing $1000 an hour for this type of work.  Foote responded the next day that he would "put [ARPAIA] at [Foote's] rate which has been approved in the 7th circuit." That rate was not specified in Foote's email, although based upon his later Certification in Support of Award of Attorney's Fees, the FOOTE FIRM requested reimbursement

for ARPAIA's hourly work at a rate of $750 per hour - which was actually $100 less per hour than Foote's certified rate on the same submission ($850). See Exhibit B.

33.   In April 2010, Foote called ARPAIA in Florida and informed ARPAIA that the none of the plaintiffs' lawyers nor the current experts they had retained could develop a class-wide damage model and that ARPAIA's help was desperately needed because the Court had ordered that all class discovery was to end by and that the plaintiffs' expert reports needed to be exchanged by July 24, 2010. Foote stated that he was concerned that without a class-wide damage model, the case would be lost because of an inability to get class certification. Foote stressed that ARPAIA's work was needed immediately because of the court-imposed deadline for expert reports. Foote told ARPAIA had spoken to Schubert and had made Schubert was aware of the contract between Foote and Plaintiff and that Foote had "protected" Plaintiff's share and that Schubert was willing to pay those fees.

34.   On or about April 28, 2010, after Google had disclosed large volumes of documents during discovery, Foote, Schubert and Plaintiff held a conference call wherein Schubert specifically assigned to ARPAIA the immediate task of reviewing these documents for purposes of gathering information upon which to base a damage model to sustain class certification because the class plaintiffs were under time pressure from court-imposed deadlines. ARPAIA was instructed to work with the economics experts directly because ARPAIA's task was to get the initial export report completed in the time frame set by the court.

35.   During the call, ARPAIA discussed various potential damage models from his prior experience as a consultant in such matters, including a Smart Pricing Damage Model and a Repricing Damage Model based on data disclosed in a Google Whitepaper on the Google Content Network.

36.    Two days later, ARPAIA received an email from Chavez "fyi – I heard from Bob that you were doing great on the call today…. I had to tell him I told you so! I'm glad you are on it." See Exhibit C.

37.    During this period, ARPAIA's import role was also acknowledged by other members of the team, including FOOTE FIRM partner Craig Mielke, Esquire, who referred to ARPAIA working on the damages model as "the smartest guy in the room when it comes to Ad Words."

38.    Within days of the April 28 call, Defendant set up ARPAIA with direct access under his own name to the Cataphora database which stored the documents disclosed by Google. Plaintiff stopped everything else he was doing and immediately began to spend many hours per day researching the potential damage models he had outlined on the call with Schubert and Foote and finding supporting documents among the Google production and keeping Foote, Schubert and Chavez apprised of his efforts. These efforts included weekly status conferences which included the members of The Schubert Firm, Foote, Chavez, ARPAIA and the two economics experts retained by the plaintiffs, Smith, and a Dr. Robert Kneuper.  It also included numerous direct phone calls and emails between Smith, Kneuper and ARPAIA.

39.    ARPAIA, at the direction of Schubert and Foote also worked directly and extensively with the two economics experts on their draft of their Initial Expert Report and to also make sure they understood the models so they would be prepared for the subsequent depositions by Google.

40.    Ultimately, while searching the documents, Plaintiff discovered support for an addition model called the "Full Refund" damages model, in addition to documents supporting the Smart Pricing Damage Model and the Content Repricing Damage Model, each of which was used in support of class certification. ARPAIA also discovered concrete documentation that demonstrated Google's placement of class member ads on pornographic parked domains.  In

addition, plaintiff provided a dearth of documents that the lawyers working on the case had never

seen before regarding the value of traffic on parked domains and the types of domain names that

Google had been placing advertiser ads on. These documents were used by the lawyers in their

briefs, motions and even incorporated into a subsequent amendment to the Complaint.

41.    For example, on May 6, 2010, Schubert responded to an email from ARPAIA

addressing documents he uncovered. "The last quote is excellent – it goes to the heart of what

Google failed to disclose to its AdWords customers and why they would have cared.  I assume it

will find a prominent position in the reports brief."  See Exhibit D.

42.    During this time, Chavez expressed admiration for ARPAIA's contribution.  On May

19, 2010, she sent an email to Plaintiff stating, "I'm really glad you are leading the charge in

Google II [In re AdWords] – the stuff you are putting together is fantastic."  See Exhibit E

43.    It was also during this period, that Chavez explicitly reiterated that ARPAIA's

compensation would be directly related to the hours submitted to (and approved by the Court), and

that his hourly fee would be submitted so as to reflect his expertise and contribution. Specifically,

on June 24, 2010, K. Chavez sent ARPAIA the following email:

> Biggest thing we need to make sure is that you send us your time to submit. Talked to Bob
> S. [Schubert] earlier this week and everyone knows you are working incredibly hard and
> we need that time to give to the judge eventually. We are supposed to collect and submit
> on a monthly basis, but Bob S. [Schubert] understands that we need to get your time from
> the past (since the case started) or it would not be fair. How much we get paid in attys fees
> will be directly related/dependent on that time and we will petition the court for fees. I told
> him I would get your time and submit all the past and also future time. We need to make
> sure your hourly rate is set to reflect your high level of expertise and ability in this type of
> work

See Exhibit F.

44.    In one conference call involving ARPAIA, members of the FOOTE FIRM, and the

experts, Dr. Smith stated to the others on the call that he was so impressed with the documentary

evidence ARPAIA was finding buried in the Google documents that no one else had been able to find that if there was one person he could take with him during the gold rush in Alaska, he would take ARPAIA because ARPAIA knew how to find all the "gold nuggets."

45.   After creating the damage models to assure the certification of the class, ARPAIA identified documents used in depositions of Google employees and experts, and at the request of Foote and Schubert, assisted with the drafting and revising interrogatories and further discovery requests and in order to specifically request the data from Google to prove ARPAIA'S damage models could be applied on a class wide basis.

46.   Throughout this time, Plaintiff kept contemporaneous records of the time he spent working on the In Re AdWords case. In addition, Plaintiff recorded the work he was doing.

47.   For the period February 2008 through July 2010, Mr. ARPAIA submitted time sheets for work on the Google Action totaling 1089.9 hours. All of ARPAIA's work during this time benefited the class.

48.   As described in the In Re AdWords settlement agreement, on December 12, 2016, Schubert, on behalf of the class and Google agreed to settle the In Re AdWords litigation.

49.   As part of the Settlement, Schubert, Foote, and other class counsel had to draft and submit various documents to the Court including an approval of the Class Settlement and an Application for Attorneys' Fees.

50.   In order to file the application for attorneys' fees, Schubert/ Foote personnel needed to collect the time sheets of all of the participating attorneys, including ARPAIA.

51.   Foote sent ARPAIA an email requesting that ARPAIA submit his Time Sheets so they could be submitted as part of the Class Counsel's Motion for Attorneys' Fees.

52.    Foote sent a spreadsheet which had a formula built in to automatically apply the rate of $750 per hour to every hour ARPAIA entered into the spreadsheet.  Foote stated that this spreadsheet format was required by an order of the court (but he subsequently admitted that this was not true and there was no order and that the exact format was not really required by a court order).

53.    Pursuant to Foote's directions, ARPAIA submitted his Time Sheets to Foote using the applied rate of $750 per hour built into the excel spreadsheet formula (even though the rate was less than the rate Foote was billing at, contrary to Foote's January 23, 2009 email) in order to calculate the total amount of attorneys' fees Plaintiff was due.

54.    ARPAIA submitted time records totaling 1089.9 hours for work on the Google Ad Words litigation for inclusion in the fee petition.

55.    In submitting its Motion for Attorney's fees (In Re: AdWords - Dkt. 375) and prepared by the Schubert firm based upon the certifications of each underling firm, including the FOOTE FIRM "Class Counsel removed billing entries for work performed: (i) by attorneys or staff that was not directly related to tasks specifically requested or assigned by Class Counsel; (ii) that was not otherwise directly necessary for the effective prosecution and resolution of the case; (iii) or that was potentially duplicative of worked performed by others." See Exhibit G.

56.    The Motion for Attorney's fees did not include billing records for work performed by any counsel prior to the Court's consolidation order (February 25, 2009), thus ARPAIA's billable hours were to be reduced to 815.1 hours to only include time for work performed after the class certification date.

57.    Ultimately in the certification of Robert Foote submitted as part of the fee petition, ARPAIA's hours were further reduced to 688.1 hours. See Exhibit H.

58.   The arbitrary and bad faith trimming of ARPAIA's hours was contrary to the agreement of the parties as memorialized in composite Exhibit A. ARPAIA was never notified his hours would be trimmed.

59.   Schubert then submitted this amount of ARPAIA's time to the In Re AdWords Court as part of their application for attorneys' fees, including the Foote certification with ARPAIA's hourly rate listed as $750 per hour.

60.   In total, Class Counsel submitted hours for $7,002,126 in billable work.  In the fee petition, Schubert sought $6,500,000, representing a *reduction* of $502,126 from Class Counsel's lodestar - approximately 7.2% of incurred fees for a voluntarily 0.93 fractional multiplier of its lodestar, or a 28.8% contingent fee from the $22,500,000 settlement award.  See Exhibit G.

61.   Throughout the papers filed with the Court (both certification and Defendants' application for fees) class counsel's – including ARPAIA's - lodestar time and hourly rate, are described as "fair and reasonable."  See Exhibit G, H.

62.   In further supporting its requested fee, the petition noted that Class Counsel, as well as supporting counsel, have special expertise in consumer class actions and complex litigation, including ample experience litigating and settling cases involving unfair business practices, specifically noting "the skill displayed in successfully opposing Google's motion to dismiss and winning their appeal of class certification denial in the Ninth Circuit is particularly noteworthy, establish[ing] the leading precedent on damages at class certification in the Ninth Circuit."  The Ninth Circuit decision essentially validated one of the damage models which was a primary focus of ARPAIA's expertise and work.  Se Exhibit G.

63.   In the Court's Order, see Exhibit I, on attorney's fees, the Court included a section called "Lodestar Cross-Check" where the court stated:

Here, Plaintiffs' counsel calculates a total lodestar figure of $7,002,126 for 12,496.6 billing hours from 17 lawyers, paralegals, and law clerks. The ranges for hourly rates are as follows: $600 to $900 for partners and "of counsel" attorneys, $350 to $520 for associates and "project attorneys," $350 for a law clerk, $190 to $220 for paralegals. Altogether, the average hourly rate for all work performed is $560. Plaintiffs' counsel has provided sufficient support for its proposed lodestar calculation. The amount of hours and other costs attributed to this case are appropriate in light of the efforts required to litigate and ultimately engage in a lengthy appellate and then settlement process. In addition, the hourly rates fall within the higher range of those historically approved in this district.

64. In Foote's Declaration to the Court, see Exhibit H, submitted in support of the award

for of attorney's fees under penalty of perjury, Foote listed ARPAIA's hours and work as: Steve

Arpaia; Title/Status: "Consulting Counsel"; Hours 688.1; Rate $750 per hour; Lodestar $516.075

(see below for the Chart Foote included in his declaration):

| Name | Title / Status | Hours | Rate | Lodestar |
|---|---|---|---|---|
| Robert Foote | Partner | 79.3 | $850 | $67,405.00 |
| Kathleen Chavez | Partner | 68.2 | $750 | $51,150.00 |
| Craig Mielke | Partner | 21.6 | $650 | $14,040.00 |
| Peter Currie | Senior Associate | 8.8 | $600 | $5,280.00 |
| Matt Herman | Senior Associate | 158.4 | $550 | $87,120.00 |
| Alex Caron | Associate | 915.9 | $350 | $320,565.00 |
| Michael D. Wong | Associate | 56.3 | $350 | $19,705.00 |
| Stephen Fung | Associate | 0.7 | $350 | $245.00 |
| Steve Arpaia | Consulting Counsel | 688.1 | $750 | $516,075.00 |
| | Totals | 1997.3 | | $1,081,585.00 |

65. Ultimately, the Court approved the settlement. See Exhibit I.

66. On September 19, 2017, ARPAIA received at his Florida address a check, see Exhibit

J from Schubert drawn on the Schubert firm bank account for $310,000, with a note on the front

cover letter and a letter from The Schubert Firm. On the check front was a note "Google AdWords

Litigation (see reverse)". On the reverse of the check, just above the signature line, was printed

the following: "Payment in full for attorneys' fees and expenses in the Google AdWords litigation".

67.    A cover letter (see Exhibit  addressed to "Stephen ARPAIA, Esq." read as follows:

*Re: In re Google AdWords Litigation (N.D. Cal. Case No. 08-cv-3369-EJD)*

Dear Mr. ARPAIA:

I am pleased to enclose our trust account check in the amount of $310,000.00.

This award represents the amount of attorneys' fees which **in my opinion** are fair in consideration of your contribution to the ultimate result, based on the complexity of tasks performed, the extent to which the tasks were delegated by lead counsel, the reasonableness of the hourly rates for the work undertaken, and any contributions to the litigation fund.

This payment represents the full payment for you and your firm in connection with this matter, and your negotiation of the check represents acknowledgement of payment in full. (Emphasis added).

The letter was signed "Robert C. Schubert"

68.    ARPAIA dismissed Schubert's bad faith attempted accord and satisfaction as legally insignificant in light of: (a) the lack of any prior pre-existing contract between ARPAIA and Schubert which is necessary for an accord and satisfaction; (2) that at no time was there ever a bona fide dispute as to what The FOOTE FIRM owed Mr. ARPAIA; (3) nor did Schubert or Mr. Foote ever object to either ARPAIA's hourly rate or the amount of hours ARPAIA submitted during the entire time ARPAIA worked on the In Re AdWords action; and (4) because the amount of $310,000 was arbitrary and in bad faith.  Mr. ARPAIA cashed the check as a partial payment of fees due from Foote.  Before cashing it, ARPAIA made notes on the check to this effect and included the amount that Foote owed him under the Declaration Foote submitted to the Court even though ARPAIA realized that his hours had been unfairly trimmed.

69.     Subject to set-off for the payment made, Defendant is in breach of contract for failing to abide by the consulting agreement negotiated between the parties, which called for payment of (a) ten percent (10%) of all attorney's fees earned before any payment to any other attorneys for fees or disbursements ($607,500.00); or (b) five percent (5%) of the first fifty percent (50%) of all attorney's fees, plus ARPAIA'S Lodestar. ($151,875 + Lodestar $516,075 = $667,950)

70.     In the alternative, subject to set-off for the payment made, Defendant is liable to ARPAIA for failing to pay him for the full number of hours worked since the beginning of the Google AdWords litigation, irrespective of the amount of time submitted to the Court for approval upon class action settlement: (1089 x. 750/ hour = $817,424.00)

71.     In the alternative, subject to set-off for the payment made, Defendant is liable to ARPAIA for the reimbursement of the full amount of fees submitted to the Court on the Motion for Attorney's Fees with the attached certification of Robert Foote.  (100% lodestar - $517,075; or at the 86.75% fractional lodestar approved by the Court - $ 448,562.56).

72.     As a result of Defendant's breach of contract, Plaintiff has been compensated far less than the amount agreed between himself and the FOOTE FIRM and far less than the fair value of his expert services as tendered.

73.     All conditions precedent necessary of the maintenance for this action have occurred, have been waived or have been excused.

COUNT I - BREACH OF CONTRACT

74.     Plaintiff realleges and reaffirms the allegations of the preceding paragraphs as if fully set forth herein.

75.     Between 2007 and 2010, STEPHEN ARPAIA  and FOOTE MIELKE CHAVEZ & O'NEILL, LLP were engaged in a business relationship pursuant to terms negotiated verbally and

through emails forming a binding contract between the two entities, pursuant to which, inter alia, ARPAIA agreed to supply information and perform services on behalf of the FOOTE FIRM in developing and prosecuting class action matters in the field of internet advertising and the FOOTE FIRM agreed to compensate ARPAIA at a rate of  (a) ten percent (10%) of all attorney's fees earned before any payment to any other attorneys for fees or disbursements; or (b) five percent (5%) of the first fifty percent (50%) of all attorney's fees, plus ARPAIA'S Lodestar – which was not set forth therein.

76.    During the course of negotiations, ARPAIA advised the FOOTE FIRM that his customary hourly fee was $1000 per hour, however, when ARPAIA was ultimately asked to submit time sheets for submission to the In Re AdWords Court, he did not modify the $750 an hour fee that was programmed into the time sheet template supplied by Defendant.

77.    Under the terms of this contract, Defendant is under a duty to pay those fees irrespective of success or outcome of any ensuant litigation and irrespective of other fees incurred in pursuing the litigation.

78.    Defendant has breached the contract by failing and refusing to pay and continuing to refuse to pay the agreed compensation due ARPAIA, either ten percent (10%) of all attorney's fees earned before any payment to any other attorneys for fees or disbursements ($607,500.00); or (b) five percent (5%) of the first fifty percent (50%) of all attorney's fees, plus ARPAIA'S Lodestar. ($151,875 + Lodestar $516,075 = $667,950).  Instead, Defendant, by and through Schubert determined that ARPAIA was only entitled to $310,000.

79.    In the alternative, subject to set-off for the $310,000 partial payment made, Defendant breached the contract by not paying ARPAIA under the contract for the full number of hours worked since the beginning of the Google AdWords litigation, irrespective of the amount of time

submitted to the Court for approval upon class action settlement. ($1089 x. 750/ hour = $817,424.00).

80.   In the alternative, subject to set-off for the $310,000 partial payment made, at a bare minimum Defendant breached the contract by not paying ARPAIA for the reimbursement of the full amount of fees submitted to the Court on the Motion for Attorney's Fees  with attached certification of Robert Foote.  (100% lodestar - $517,075; or at the 86.75% fractional lodestar approved by the Court - $ 448,562.56).

81.   As a result of Defendant's breach of contract, Plaintiff has suffered damages in an amount in excess of $30,000.00.

WHEREFORE, Plaintiff STEPHEN ARPAIA demands judgment against Defendant, FOOTE MIELKE CHAVEZ & O'NEILL, LLP for damages in an amount in excess of $30,000.00, plus interest, costs, and fees, and such other and further relief as this Court may deem just and proper.

## COUNT II – UNJUST ENRISHMENT

82.   Plaintiff realleges and reaffirms the allegations of paragraphs 1 – 73 as if fully set forth herein.

83.   Between 2007 and 2012 STEPHEN ARPAIA performed services internet consulting services on behalf of Defendant FOOTE MIELKE CHAVEZ & O'NEILL, LLP in conjunction with class action litigation eventually consolidated as the In Re AdWords matter.

84.   The services requested by the FOOTE FIRM and provided by ARPAIA provided value to the Defendant and other class counsel as outlined above and was directly responsible for more than $6,000,000 in attorneys' fees for the class counsel, including Defendant.

85.    Specifically, the FOOTE FIRM certified to the Court that the work it submitted for reimbursement for ARPAIA'S work on its behalf was fair and reasonable, did not include any time (i) by attorneys or staff that was not directly related to tasks specifically requested or assigned by Class Counsel; (ii) that was not otherwise directly necessary for the effective prosecution and resolution of the case; (iii) or that was potentially duplicative of worked performed by others.  In addition, Defendant submitted a separate bill to the Court for expenses.

86.    Moreover, Schubert used the arbitrary number of ARPAIA'S hours submitted by Foote in the Foote Declaration to justify the more than $6,000,000 for which Schubert on behalf of all counsel, including the FOOTE FIRM, was seeking in attorneys' fees.

87.    To date, ARPAIA has been compensated only $310,000, which is far less than the reasonable value of the services bestowed upon Defendant, and for which it was directly reimbursed by Court Order.

88.    It would be inequitable for the FOOTE FIRM to retain the value of the services provided by STEPHEN ARPAIA without it paying a reasonable figure for those services.

89.    As a result of Defendant's acceptance of the service and failure to date, to pay STEPHEN ARPAIA for the services undertaken, the FOOTE FIRM has been unjustly enriched.

WHEREFORE, Plaintiff STEPHEN ARPAIA demands judgment against Defendant, FOOTE MIELKE CHAVEZ & O'NEILL, LLP for damages in an amount in excess of $30,000.00, plus interest, costs, and fees, and such other and further relief as this Court may deem just and proper.

WHEREFORE, Plaintiff STEPHEN ARPAIA demands judgment against Defendant, FOOTE MIELKE CHAVEZ & O'NEILL, LLP for damages in an amount in excess of $30,000.00, plus

interest, costs, and fees, and such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

The Law Office of Stephen Barker
901-A Clint Moore Road
Boca Raton, FL 33487
561-910-4340
slb@stephenbarkerlaw.com

BY:   /s/  *Stephen Barker*
STEPHEN L. BARKER, ESQ.

Filing # 109473655 E-Filed 06/26/2020 02:44:47 PM

---

**Larkin, Edwin**

| | |
|---|---|
| **From:** | KChavez@tmo.blackberry.net |
| **Sent:** | Thursday, September 13, 2007 3:41 PM |
| **To:** | Larkin, Edwin; Steve Arpaia |
| **Cc:** | Gkeg4@aol.com; Rmf2; Bob Foote |
| **Subject:** | Re: phone numbers |

Yes-- Steve is right about that fee arrangement and I think it is consistent with what bob originally said-- and I agree that we should make sure that it is spelled out in a little more detail and with clearer language-- so I want to take it up with bob and you as soon as we can get the amended complaint finished.  I wanmt steve to feel assured that this is being done right-  thanks
Sent via BlackBerry from T-Mobile

-----Original Message-----
From: "Larkin, Edwin" <elarkin@hiscockbarclay.com>

Date: Thu, 13 Sep 2007 15:10:41
To:<KChavez@tmo.blackberry.net>,"Steve Arpaia" <sarpaia@rochester.rr.com> Cc:<Gkeg4
@aol.com>,"Rmf2" <rmf@foote-meyers.com>,"Bob Foote" <rfoote@vzw.blackberry.net>,"Larkin, Edwin"
<elarkin@hiscockbarclay.com>
Subject: RE: phone numbers

Kathleen -

    I received your e-mail, below, and Steve and I have also spoken.  Steve has asked me to handle these discussions for him.

    Steve advises that you and he discussed the following: Steve will receive the greater of: (a)  ten percent (10%) of all attorneys fees before any payments to any other attorneys for fees or disbursements; or (b) five percent (5%) of the first fifty percent (50%) of all attorneys fees plus Steve's lodestar.  We will need to discuss what Steve's lodestar rate will be and there needs to be an understanding that all of Steve's time working on the Deceptive Domains Litigation, both prior to and after making contact with you and Bob, would be included in his lodestar time.

    In addition, since additional possible follow on litigations have been identified by Steve, including, but not limited to, the possibility of Deceptive Domain claims against other defendants (such as Yahoo), securities actions and possible actions by advertisers, whatever final agreement is reached with regard to the Deceptive Domains Litigation must also be applicable to any follow-on litigation by any of the attorneys/law firms involved in the Joint Representation in the Deceptive Domains Litigation.  It is understood that these terms would be agreed to by all attorneys/law firms that are involved on the plaintiff's side in the Deceptive Domains Litigation.

    Steve is willing to defer finalizing the other details of the agreement until after the filing of the Amended Complaint, but we would appreciate it if, as a minimum, you and Bob would confirm that the terms set forth above are acceptable.

    Please call if there are any questions - (585-295-4464 - office), (585-381-9816 - home), (585-301-8403 - cell).

Thanks.  Please give my regards to Bob.

Ed

-----Original Message-----
From: KChavez@tmo.blackberry.net [mailto:KChavez@tmo.blackberry.net]
Sent: Thursday, September 13, 2007 2:12 PM
To: Steve Arpaia; Larkin, Edwin
Cc: Gkeg4@aol.com; Rmf2; Bob Foote
Subject: Re: phone numbers


Steve and - just talked and I explained the strategy behind that version of JPA --and also explained that
NOTHING will be agreed to without his and eds approval first-- I think steve had a great suggestion on how to
handle the language to guarantee him a minimum fee while giving him maximum opportunity to increase his
share through the lodestar distribution--but we should table this until after the complaint gets filed and we have
time to make sure we get it right--
Sent via BlackBerry from T-Mobile

-----Original Message-----
From: "Stephen Arpaia, Esq." <sarpaia@rochester.rr.com>

Date: Thu, 13 Sep 2007 12:42:48
To:"Larkin, Edwin" <elarkin@hiscockbarclay.com>
Cc:<Gkeg4@aol.com>, <KChavez@tmo.blackberry.net>,       "Robert Foote" <rmf@foote-meyers.com>,
<rfoote@vzw.blackberry.net>
Subject: phone numbers


Ed, here are the numbers for the respective parties:

Kathleen Chavez:  603 404 0523

Bob Foote:  630 650 8177

please deal with this and get back to me.  you know my position.

Steve



Federal Tax Disclosure and Confidentiality Notice:
In accordance with IRS requirements, we inform you that any Federal tax advice contained in this
communication is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding
penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any
transaction or matter addressed herein.

This electronic mail transmission is intended only for the use of the individual or entity to which it is addressed
and may contain confidential information belonging to the sender which is protected by the attorney-client
privilege.  If you are not the intended recipient, you are hereby notified that any disclosure, copying,
distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited.  If

2

Print                                              https://mg.mail.yahoo.com/?.src=neo&reason=bkt_myc#183546486

Filing # 109473655 E-Filed 06/26/2020 02:44:47 PM

| Subject: | RE: google |
|----------|------------|
| From: | Robert Foote (rmf@foote-meyers.com) |
| To: | stephenarpaia@yahoo.com; rfoote@vzw.blackberry.net; |
| Cc: | GKEG4@aol.com; |
| Date: | Friday, January 23, 2009 8:03 AM |

No problem--im not sure how to best use your time-if it turns out they
pay a high percentage of our loadstar then you will be better off just
with your time--if the % is low you will be better off off the top-I
don't think they r going to pay a 7 figure number--I will put you in at
my rate which has been approved in the 7th circuit-when we get closer on
this they will want to see the original time backup -the ad case is
filed in sf--jit is our pl-there r about 5 other cases filed we have
made a deal to be co-lead--hope I can get down to florida to say hi
before spring

-----Original Message-----
From: Steve Arpaia [mailto:stephenarpaia@yahoo.com]
Sent: Thursday, January 22, 2009 11:45 PM
To: bob bb; Robert Foote
Subject: google

Bob, I am sorry this took a little longer than I expected to compile the
hours, in addition, we are going to be back in our new place in Boca Jan
31, so we are getting ready to move too.

Funny thing first, you knew Goog was going to beat its estimates!  They
steal all thier traffic from the poor sucker companies who fight for
every visitor, then resell it back to them.  Look at poor UBID and
Burlington Coat.

As to hours and expenses:

My total hours cover almost 3 years, because as Ed can attest to, I
started working on compiling this case and collecting evidence and
information in Feb. 2006.  When we came to you, it was already over a
year after I had started this.  I have suitcases full of evidence.

My total hours are 2170.  Those are individual hours for myself.  My
actual expenses are minimal, 3 plane trips, etc.  I have my hours on my
computer here, but tracking down the acutal cost of those trips, food
would be a pain right now bec. I have to get my accountants to do that.
So, in the interests of having a number now, I will leave those out.

Print                                          https://mg.mail.yahoo.com/?.src=neo&reason=bkt_myc#183546486

How you arrange my hourly rate is a different story.  For regular
consulting I do, I get $1000 per hour.  I am one of maybe 5 lawyers in
the US who had the expertise, knowledge and experience in this industry
to craft the ACPA claims.  That expertise is worth something.

You, Ed, Kathleen and I have discussed our arrangement on different
occasions, and I am not familiar with lodestar and how this works. What
I do know, is that the vast majority of my work was on the ACPA claim
which is what I came to you with.  In addition, we have talked at length
about a percentage coming off the top for my bringing the case to you.

I TRUST you and Kathleen implicitly which is why I never worried about
this.  So, use your judgement, and determine how we proceed if there
really is some settlement.

I imagine you are waiting to see where this is going before you file
UBID.  Did you ever refile the ad class.  Kathleen said she was going to
work on the redraft of the complaint, but I have not seen anything.

Take care, and hopefully we will see you guys in FL.

Steve

9/28/2017, 9:57 AM

Filing # 109473655 E-Filed 06/26/2020 02:44:47 PM

## Re: FW: Talking points and preliminary Model

From:  gkeg4@aol.com

To:  stephenarpaia@yahoo.com

Date:  Friday, April 30, 2010, 06:13 PM EDT

fyi ~ I heard from Bob that you were doing great on the call today.... I had to tell him I told him so!  im glad you are on it.

Kathleen C. Chavez, Esq.
CHAVEZ LAW FIRM, P.C.
3 N. Second Street
Suite 300
Saint Charles, IL 60174
Telephone: (630)232-4480

CONFIDENTIALITY NOTICE: This e-mail and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying distribution, or use of this e-mail or any attachment is prohibited.  If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system.  Thank you.

Filing # 109473655 E-Filed 06/26/2020 02:44:47 PM

correct term is "ad bin" AFS ad bin, AFC ad bin, AFS

From:  Steve Arpaia (stephenarpaia@yahoo.com)

To:    wjonckheer@schubertlawfirm.com; mkolbe@schubertlawfirm.com; jessie@alchemistmedia.com;
       fder@schubertlawfirm.com; noahs@me.com; rschubert@schubertlawfirm.com

Date:  Friday, May 7, 2010, 08:09 AM EDT

Just to reiterate that there are only two ad pools(when i mentioned feeds, that how i was using the term), actually I think I found the exact terminilogy, im researching this today further:

"ad bins"

OID: i.m.a7b087b09bfcd497cd06a7d14bee2c35
In March 2008, the AFD product was unrolled in placement performance reports (PPR) so that advertisers can see individual impression and click data for AFD.◆ **This includes all sites serviced by either the AFC ad bin or the AFS ad bin.**◆

And here was a breakdown they did of the search ad bin revenue from the Adsense For Domains Channel:

"AFS is 20% of impressions, 45% of clicks, 63% revenue"
Pretty interesting stats.  The confusion was that as Noah pointed out, at some point the acronym "AFD" also began to refer to a subset of the content ads from the AFC ad bin (content advertisers) not just the Adsense for Domains channel as a whole.

Note that at the time they did this PPR report, they did not break it out by domain.  I have a TON of good docs on how PPR was manuipulated to hide AFD Search.

Steve


--- On Thu, 5/6/10, Robert C. Schubert *<rschubert@schubertlawfirm.com>* wrote:

> From: Robert C. Schubert <rschubert@schubertlawfirm.com>
> Subject: RE: AFD is 700 Million in Rev "fueled by search ads"
> To: "Steve Arpaia" <stephenarpaia@yahoo.com>, "Willem F. Jonckheer"
> <wjonckheer@schubertlawfirm.com>, "Miranda Kolbe" <mkolbe@schubertlawfirm.com>,
> "jessie@alchemistmedia.com" <jessie@alchemistmedia.com>, "Francis Der"
> <fder@schubertlawfirm.com>, "Noah Schubert" <noahs@me.com>
> Date: Thursday, May 6, 2010, 9:57 PM
>
> The last quote is excellent – it goes to the heart of what Google failed to disclose to its AdWords customers
> and why they would have cared. I assume it will find a prominent position in the reports brief.

**From:** Steve Arpaia [mailto:stephenarpaia@yahoo.com]
**Sent:** Thursday, May 06, 2010 1:20 PM
**To:** Robert C. Schubert; Willem F. Jonckheer; Miranda Kolbe; jessie@alchemistmedia.com; Francis Der; Noah Schubert
**Subject:** AFD is 700 Million in Rev "fueled by search ads"

In case you didnt see this already:

OID: i.m.d022d0960c54bc0574d6cb61ad7cef38
Domain channel is important financially - $700m annual revenue Revenue growth increasingly fueled by search ads. ◆◆ AFS feed to direct partners
Steve
--- On **Thu, 5/6/10, Noah Schubert <*noahs@me.com*>** wrote:

> From: Noah Schubert <noahs@me.com>
> Subject: More Objections to Use of AFS Feed
> To: "Robert Schubert" <rschubert@schubertlawfirm.com>, "Willem F. Jonckheer"
> <wjonckheer@schubertlawfirm.com>, "Miranda Kolbe" <mkolbe@schubertlawfirm.com>, "Steve
> Arpaia" <stephenarpaia@yahoo.com>, jessie@alchemistmedia.com, "Francis Der"
> <fder@schubertlawfirm.com>
> Date: Thursday, May 6, 2010, 6:33 AM
>
> A couple other choice quotes I found objecting to the inclusion parked domains in the AFS feed:
>
> **Nick Fox, Senior Product Manager for Ads Quality (June 2007)**
> "It seems unprincipled to withhold improvements from a certain subset of our partner base...it
> seems even more wrong that we're showing an advertiser's ads on non-search sites even though
> they've only opted-in to search."
>
> "It's disappointing that we'd be willing to show advertiser's ads on properties that they've asked not
> to show up on simply to make these deals more competitive. The thread is difficult to understand,
> but what sales wants shouldn't really matter. PM (or EMG) should be making these decisions, not
> sales."
>
> **Loren Donelson, Product Manager for AdSense for Domains (June 2007)**
> "I am not sure that using our AFS feed on domain parks provides advertisers with what they expect
> when they opt into AdSense for Search. While I respect the position that to be competitive Google
> has to offer AFS to domain parks, I think most advertisers would respond that their AFS ads
> should only be shown after a user uses a search box to submit a search."

Filing # 109473655 E-Filed 06/26/2020 02:44:47 PM

Re: important docs and excerpts

From:  kathleen chavez (gkeg4@aol.com)

To:  stephenarpaia@yahoo.com

Date:  Wednesday, May 19, 2010, 09:31 AM EDT

The reason we didn't get this stuff in vulcan is because we didn't get certified..its so frustrating. I'm really glad you are leading the charge in Google II- the stuff you are putting together is fantastic.

Sent via BlackBerry from T-Mobile

**From:** Steve Arpaia <stephenarpaia@yahoo.com>
**Date:** Wed, 19 May 2010 06:25:18 -0700 (PDT)
**To:** <gkeg4@aol.com>
**Subject:** Re: important docs and excerpts

theres so much stuff they did not give us.  read this quote on an analysis of why dell doing bad on AFD:

"One issue affecting AFD is the lack of Dell related AFD sites - Dell does a much better job than most at controlling the various misspellings of their name."

thats the whole ubid issue too.  put UBID ads on UBID tm violations.  thats what the scam was. thats why looking at conversions is BS.  if you look at conversions, look to see if its a tm violation, then calcualte $100K in damages for using the domain.  its depressing how bad this all was.  you have to see all the child porn they knew about.  its horrendous!  the whole company was a fraud.

i have so many docs which show the specifically targetting misspellings of tms.  i didnt even send them all.

s

--- On **Wed, 5/19/10, kathleen chavez <*gkeg4@aol.com*> wrote:

From: kathleen chavez <gkeg4@aol.com>
Subject: Re: important docs and excerpts
To: "Steve Arpaia" <stephenarpaia@yahoo.com>
Date: Wednesday, May 19, 2010, 1:21 PM

Its really good- too bad we didn't get class treatment in vulcan. I still think another variation would be worth trying...
Sent via BlackBerry from T-Mobile

**From:** Steve Arpaia <stephenarpaia@yahoo.com>
**Date:** Wed, 19 May 2010 03:30:58 -0700 (PDT)
**To:** Francis Der<fder@schubertlawfirm.com>
**Cc:** Willem F. Jonckheer<wjonckheer@schubertlawfirm.com>; Stan Smith<Stan@SmithEconomics.com>; Robert C.

Print                                                          https://mg.mail.yahoo.com/?.src=neo&reason=bkt_myc#4299374514

Filing # 109473655 E-Filed 06/26/2020 02:44:47 PM

| Subject: | RE: tommorrow |
| --- | --- |
| From: | gkeg4@aol.com (gkeg4@aol.com) |
| To: | stephenarpaia@yahoo.com; |
| Date: | Thursday, June 24, 2010 3:46 PM |

Biggest thing we need to make sure is that you send us your time to submit. Talked to Bob S. earlier this week and everyone knows you are working incredibly hard and we need that time to give to the judge eventually. We are supposed to collect and submit on a monthly basis, but Bob S. understands that we need to get your time from the past (since the case started) or it would not be fair. How much we get paid in attys fees will be directly related/dependant on that time and we will petition the court for fees. I told him I would get your time and submit all the past and also future time. We need to make sure your hourly rate is set to reflect your high level of expertise and abiltiy in this type of work. So, talk to Ed about it and let me know your thoughts.


-----Original Message-----
From: Steve Arpaia <stephenarpaia@yahoo.com>
To: rmf assistant <rmfassistant@foote-meyers.com>; Robert Foote <rfoote@foote-meyers.com>
Cc: Kathleen Chavez Home <GKEG4@aol.com>
Sent: Thu, Jun 24, 2010 12:37 pm
Subject: RE: tommorrow

Bob, Im knee deep in the experts reports and docs for the ad class for the conference call today, and also compiling the necessary documents from my own files for Vulcan. Ive asked Ed to handle this for me because I need to focus on what Im doing here due to the time constraints we are under. He's going to contact you directly.

Steve

--- On **Thu, 6/24/10, Robert Foote <_rfoote@foote-meyers.com_>** wrote:

From: Robert Foote <rfoote@foote-meyers.com>
Subject: RE: tommorrow
To: "'Steve Arpaia'" <stephenarpaia@yahoo.com>, "rmf assistant" <rmfassistant@foote-meyers.com>
Cc: "Kathleen Chavez Home" <GKEG4@aol.com>
Date: Thursday, June 24, 2010, 2:38 PM


When can we talk tomm?

Filing # 109473655 E-Filed 06/26/2020 02:44:47 PM

1   ROBERT C. SCHUBERT (S.B.N. 62684)
    (rschubert@sjk.law)
2   NOAH M. SCHUBERT (S.B.N. 278696)
    (nschubert@sjk.law)
3   **SCHUBERT JONCKHEER & KOLBE LLP**
4   Three Embarcadero Center, Suite 1650
    San Francisco, CA 94111
5   Telephone:    (415) 788-4220
    Facsimile:    (415) 788-0161
6
7   *Class Counsel*

8

9                   UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                      SAN JOSE DIVISION

12

13   **IN RE GOOGLE ADWORDS**          Case No. 08-cv-3369-EJD
     **LITIGATION**
14
                                       **PLAINTIFFS' NOTICE OF MOTION**
15                                     **AND MOTION FOR (1) AWARD OF**
                                       **ATTORNEYS' FEES, (2)**
16                                     **REIMBURSEMENT OF COSTS AND**
                                       **EXPENSES, AND (3) SERVICE**
17                                     **AWARDS; MEMORANDUM OF**
                                       **POINTS AND AUTHORITIES**
18
19                                     Date:        July 27, 2017
20                                     Time:        9:00 a.m.
                                       Judge:       Hon. Edward J. Davila
21                                     Courtroom:   4, 5th Floor

22                                     Action Filed:  July 11, 2008
23
24
25
26
27
28
     Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards
     Case No. 08-cv-03369-EJD

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

## NOTICE OF MOTION

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD HEREIN:**

PLEASE TAKE NOTICE that on July 27, 2017 at 9:00 a.m., or as soon thereafter as this matter can be heard, in the Courtroom of the Honorable Edward J. Davila, United States District Judge for the Northern District of California, 280 South 1st Street, 5th Floor, Courtroom 4, San Jose, California 95113, plaintiffs Pulaski & Middleman, LLC; JIT Packaging, Inc.; RK West, Inc.; and Richard Oesterling (collectively, "Plaintiffs") will and hereby do move this Court for an order pursuant to Federal Rule of Civil Procedure 23(h) granting the following relief:

1.    Awarding attorneys' fees to Class Counsel in the amount of $6,500,000;

2.    Awarding $700,000 in reimbursement of out-of-pocket litigation costs and expenses to Class Counsel; and

3.    Awarding $5,000 in service awards to Class Representatives JIT Packaging, Inc. ("JIT"); RK West, Inc. ("RK West"); and Richard Oesterling ("Oesterling").

This motion is based on this Notice of Motion; the attached Memorandum of Points and Authorities; the declarations of Plaintiffs' counsel Noah M. Schubert, Kimberly A. Kralowec, Adam C. Belsky, and Robert M. Foote; the declarations of Plaintiffs; all other documents currently on file in this action; the argument of counsel; and any other evidence the Court may choose to entertain.

## STATEMENT OF ISSUES PRESENTED

1.    Is the request for attorneys' fees in the amount of $6,500,000 fair, reasonable, appropriate, and justified under the circumstances?

2.    Should the Court award Class Counsel reimbursement of their out-of-pocket litigation costs and expenses in the amount of $700,000?

3.    Are the requests for service awards to Class Representatives JIT, RK West, and Oesterling in the amount of $5,000 fair, reasonable, and appropriate?

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     RELEVANT BACKGROUND ...........................................................................3

        A.      This Action Settled Following Years of Hard-Fought Litigation.................3

                1.      Summary of Plaintiffs' Claims and Relevant Procedural History .................3

                2.      The Parties Conducted Extensive Discovery....................................4

                3.      Plaintiffs Won Pivotal Victories, Including Defeating the
                        Motion to Dismiss and Reversing this Court's Denial of
                        Class Certification in the Ninth Circuit. ...........................................4

                4.      The Parties Engaged in Arm's-Length Negotiations
                        before a Highly Respected Mediator. ...............................................5

        B.      The Court Granted Preliminary Approval of the Settlement. ....................6

III.    ARGUMENT ......................................................................................................7

        A.      California Law Governs the Award of Attorneys' Fees and Costs. ..........7

        C.      The Requested Fee Award of $6,500,000 is Fair, Reasonable, and Justified............8

                1.      The Fee Award—Representing a Fractional Multiplier of Class
                        Counsel's Lodestar—Is Unquestionably Fair and Reasonable.....................8

                        a.      Class Counsel's Hourly Rates are Reasonable. ...............................9

                        b.      The Hours Billed by Class Counsel Are Reasonable.......................11

                        c.      Although Not Requested. Class Counsel
                                Would Be Entitled to a Lodestar Multiplier. ...................................14

                2.      A Percentage-of-the-Fund "Cross Check" Confirms
                        the Reasonableness of Class Counsel's Fee Request..................................15

                        a.      The Requested Fees Are Reasonable Under California Law............15

                        b.      Plaintiffs' Fee Request Is Reasonable Under Ninth Circuit
                                Precedent and Consistent with Fee Awards in Comparable Cases...15

                3.      Other Factors Support Plaintiffs' Fee Request ..........................................16

                        a.      Class Counsel Achieved an Excellent
                                Result on a Purely Contingent Basis...............................................17

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

b.    Class Counsel Bore Substantial Risk by Litigating this Difficult and Complex Case. ....................................17

c.    Class Counsel Handled the Difficult Factual and Legal Issues with Skill and Success. ..................................18

d.    Class Counsel's Work in this Case Precluded Their Employment on Other Matters. ....................................19

e.    The Benefits to the Public Achieved by Class Counsel Support the Fee Request. ......................................19

D.    Class Counsel's Reasonable Out-Of-Pocket Expenses Incurred in This Litigation Should be Reimbursed. ..........................20

E.    The Class Representative Service Awards Are Fair, Reasonable, and Justified, and Should be Approved. ......................22

IV.   CONCLUSION. ...............................................................................23

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**TABLE OF AUTHORITIES**

**Cases**

*Barbosa v. Cargill Meat Sols. Corp*, 297 F.R.D. 431 (E.D. Cal. 2013) ....................................17, 18

*Beaver Cnty. Emples. Ret. Fund v. Tile Shop Holdings, Inc.*, 2017 U.S. Dist. LEXIS 15018 (N.D. Cal. Feb. 2, 2017)................................................................................................................10

*Blum v. Stenson*, 465 U.S. 886 (1984) ...................................................................................9

*Brown v. Hain Celestial Grp., Inc.*, 2016 U.S. Dist. LEXIS 20118 (N.D. Cal. Feb. 18, 2016) .......16

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008) ...........................................9

*Carnes v. Atria Senior Living, Inc.*, 2016 U.S. Dist. LEXIS 182751 (N.D. Cal. July 12, 2016) .....14

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) .............................................................5

*Destefano v. Zynga, Inc.*, 2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016) .....................22

*Discover Bank v. Superior Court*, 36 Cal. 4th 148, 156-57 (2005) ..........................................20

*Emmons v. Quest Diagnostics Clinical Labs, Inc.*, 2017 U.S. Dist. LEXIS 27249 (E.D. Cal. Feb. 24, 2017) ..............................................................................................................8, 14, 15

*Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997 (9th Cir. 2002); ..............7, 8, 9

*Fortson v. Marriott Int'l, Inc.*, 2013 U.S. Dist. LEXIS 62496 (N.D. Cal. May 1, 2013) ................14

*Glendora v. Cmty. Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465 (1984) ...................17

*Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553 (2004)...................................................18

*Gutierrez v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 67298 (N.D. Cal. May 21, 2015)....10

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994)...............................................................22

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ..............................................................14, 17

*Hopkins v. Stryker Sales Corp.*, 2013 U.S. Dist. LEXIS 16939 (N.D. Cal. Feb. 6, 2013) ..............16

*In re Animation Workers Antitrust Litig.*, 2016 U.S. Dist. LEXIS 156720 (N.D. Cal. Nov. 11, 2016) ................................................................................................................9

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011 ...................................8

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 U.S. Dist. LEXIS 5383 (N.D. Cal. Jan. 14, 2016) ..............................................................................................................21

*In re Google Referrer Header Privacy Litig.*, 87 F.Supp.3d 1122 (N.D. Cal. 2015) .....................23

1  *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ....................18

2  *In re High-Tech Employee Antitrust Litig.*, 2015 U.S. Dist. LEXIS 118052 (N.D. Cal. Sept. 2,

3  2015) ..................................................................................................................................10, 12

4  *In re Omnivision Techs.*, 559 F. Supp. 2d, 1036 (N.D. Cal. 2007).........................................17

5  *In re Optical Disk Drive Prods. Antitrust Litig.*, 2016 U.S. Dist. LEXIS 175515 (N.D. Cal. Dec.

6  19, 2016) ...............................................................................................................................9, 16

7  *In re Polyurethane Foam Antitrust Litig.*, No. 10-md-2196 (N.D. Ohio) ................................11

8  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994)..........................9

9  *Keller v. NCAA*, 2015 U.S. Dist. LEXIS 166546 (N.D. Cal. Dec. 10, 2015)..............................16

10  *Konstantinos Moshogiannis v. Sec. Consultants Grp., Inc.*, No. 10-cv-5971 (N.D. Cal. Jun 19,

11  2012) ...................................................................................................................................17

12  *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480 (2016).....................................................8, 15, 16

13  *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 40 (2000) .........................................17, 19

14  *Mangold v. California Public Utils. Comm'n*, 67 F.3d 1470 (9th Cir. 1995)........................8, 14

15  *Moore v. PetSmart, Inc.*, 2015 U.S. Dist. LEXIS 102804 (N.D. Cal. Aug. 4, 2015) ................17

16  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989).................................8

17  *Prison Legal News v. Schwarzenegger*, 608 F.3d 446 (9th Cir. 2010).....................................10

18  *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015) ...........................19, 21

19  *Rodriguez v. West Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009)..................................................22

20  *Serrano v. Priest*, 20 Cal. 3d 25 (1977) ................................................................................7, 14

21  *Smith v. CRST Van Expedited, Inc.*, 2013 U.S. Dist. LEXIS 6049 (S.D. Cal. Jan. 14, 2013)..........16

22  *State v. Meyer*, 174 Cal. App. 3d 1061 (1985) ......................................................................19

23  *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...............................................................20

24  *True Health Chiropractic, Inc. v. McKesson Corp.*, No. 13-cv-2219-HSG (N.D. Cal.) ..................10

25  *Tyson Foods Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016)......................................5

26  *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010)............................16, 22

27  *Vasquez v. Superior Court*, 4 Cal. 3d 800 (1971).................................................................20

28  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002).............................................8, 16

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**Statutes**

28 U.S.C. § 1332(d) .............................................................................................................7

Cal. Bus. & Prof. Code §§ 17500 .......................................................................................4

Cal. Bus. & Prof. Code. §§ 17200 .......................................................................................3

**Rules**

Fed. R. Civ. Proc. 23(h) ..................................................................................................7, 20

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Class Counsel seeks an order awarding them $6,500,000 in reasonable attorneys' fees, reimbursement of $700,000 in out-of-pocket expenses incurred in prosecuting this action, and service awards of $5,000 each to Class Representatives JIT, RK West, and Oesterling in recognition of their efforts.[1]

Class Counsel incurred $7,002,126 in billable work. The requested $6,500,000 fee therefore actually represents a *reduction* of $502,126 from Class Counsel's lodestar. Accordingly, Class Counsel has agreed to forego approximately 7.2% of its fees and voluntarily seek a 0.93 fractional multiplier of its lodestar. This voluntary reduction will maximize the settlement benefits payable to Settlement Class Members.[2] Similarly, Class Counsel's actual out-of-pocket expenses exceed the $700,000 it now seeks.

For more than eight years, the parties fiercely contested whether Google misled its AdWords advertisers by failing to disclose that it placed their ads on allegedly low-quality parked domains and error pages. Class Counsel defeated Google's motion to dismiss the complaint, substantially completed all merits discovery, including almost one million pages of documents and depositions of Google's witnesses and experts, obtained reversal of this Court's denial of class certification in the U.S. Court of Appeals for the Ninth Circuit, and successfully opposed a petition for certiorari in the U.S. Supreme Court. Class Counsel then negotiated a fair, adequate, and reasonable settlement on behalf of the Class. On March 9, 2017, the Court granted preliminary approval of the proposed $22.5 million non-reversionary cash Settlement. Dkt. No. 369.

---

[1] These amounts include attorneys' fees and out-of-pocket expenses incurred by the other law firms that Class Counsel assigned work to during the course of this litigation. Pursuant to § 8.8 of the Settlement Agreement, Class Counsel will have sole discretion to distribute the Fee and Expense Award to these other participating law firms.

[2] Capitalized terms not defined herein have the meanings set forth in the Class Action Settlement Agreement (the "Settlement Agreement") that was filed on February 23, 2017 as Exhibit A to the Declaration of Noah M. Schubert (Dkt No. 365-1).

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1    The proposed settlement is an exceptional result for the Class. The settlement fund represents

2    between 29% and 50% of the relief that could have been recovered at trial, assuming that Plaintiffs

3    prevailed on the merits and on damages. Google, of course, vigorously disputed Plaintiffs'

4    arguments at every turn. This settlement avoids the myriad of risks, delays, and hurdles of a trial.

5    *See* Dkt. No. 367, ¶¶ 7-9. It is an outstanding result.

6    The Settlement was the result of the considerable time, effort, and resources expended by

7    Class Counsel on behalf of the Class. For example, Class Counsel incurred $750,645.43 in actual

8    out-of-pocket costs and expenses to litigate this action and achieve a settlement. *See* § III(D), *infra*.

9    This represents a sizeable investment of Class Counsel's resources, which were committed to the

10   case throughout. Over the eight years of litigation, Class Counsel and their staff devoted 12,496.6

11   billable hours to working the case—all work that was necessary and reasonable to successfully

12   resolve this matter. *See* § III(C)(1)(b), *infra*.

13   For their services in generating a settlement fund for the benefit of the class, Class Counsel

14   seeks a $6.5 million fee award. This fee represents a fraction of their lodestar—and an amount

15   totaling less than 29% of the Settlement Fund. Plaintiffs also seek an award of $700,000 in

16   unreimbursed out-of-pocket costs and expenses incurred in litigating the action. Additionally,

17   Plaintiffs request service awards for Class Representatives JIT, RK West, and Oesterling for their

18   services on behalf of the Class.

19   Here, the Court has discretion to determine an award of attorneys' fees under either the

20   lodestar or percentage-of-the-fund approach. Regardless of the method applied, Plaintiffs' $6.5

21   million fee request is reasonable and well-within the range of fees commonly awarded in comparable

22   cases. Under the lodestar method, the request is unquestionably reasonable, as the amount is less

23   than 93% of counsel's actual lodestar..Further, because the benefit to the class is easily quantified,

24   the percentage-of-the fund "cross-check" confirms that the requested amount is reasonable. The fee

25   represents approximately 28.9% of the settlement fund, in accord with other fee awards in California

26   and the Ninth Circuit.

27   Likewise, Class Counsel's request for $700,000 in costs and expenses is also reasonable. It

28   represents $50,645.43 *less* than their expenses to date. These out-of-pocket expenses were necessary

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1  to the litigation. The bulk were incurred in retaining critical experts and litigation consultants,

2  participating in mediation, electronically hosting Google's massive document production,

3  conducting legal research, and deposing Google's key witnesses and experts.

4      Lastly, as is common in settled class actions where the efforts of the named plaintiffs were

5  instrumental in producing a class-wide settlement, Plaintiffs also seek approval of $5,000 service

6  awards payable to Class Representatives JIT, RK West, and Oesterling. These amounts are

7  consistent with the service awards approved by this and numerous other California courts in similar

8  circumstances. As explained in their declarations, filed herewith, Class Representatives JIT, RK

9  West, and Oesterling met and conferred with counsel during the litigation, attended day-long

10 depositions, and provided responses and documents in response to Google's discovery requests. The

11 Class Representatives' participation in the litigation was invaluable to Class Counsel's efforts and

12 merits the requested awards.

13     Accordingly, the Court should grant Class Counsel's motion and enter the proposed order,

14 submitted herewith.

15

16 **II.**    **RELEVANT BACKGROUND**

17     **A.**    **This Action Settled Following Years of Hard-Fought Litigation**

18         1.    Summary of Plaintiffs' Claims and Relevant Procedural History

19     The first of several actions in this consolidated litigation was filed in July 2008 (*Levitte v.*

20 *Google,* No. 08-cv-3369 (N.D. Cal. July 11, 2008). On February 25, 2009, the Court (Hon. James

21 Ware presiding) consolidated the *Levitte* action with the related underlying actions as *In re Google*

22 *AdWords Litigation. See* Dkt. No. 40. On April 24, 2009, Plaintiffs filed a consolidated complaint

23 (Dkt. No. 45) and further amended their complaint twice more to reflect facts they learned during

24 discovery. Google answered each of the consolidated and amended complaints. Dkt. Nos. 46, 77,

25 156. Plaintiffs then sought leave to file a Third Amended Complaint, which, after contested motion

26 practice and oral argument, Judge Ware granted. *See* Dkt. Nos. 127, 141, 148, 163-64. In their

27 operative Third Amended Complaint, Plaintiffs contend that Google violated California's Unfair

28 Competition Law ("UCL"), Cal. Bus. & Prof. Code. §§ 17200 *et seq.*, and False Advertising Law

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1   ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*, by failing to disclose to its AdWords advertisers

2   that it placed their ads on low-quality parked domains and error pages. Plaintiffs alleged that this

3   nationwide class of advertisers overpaid for their ads and were owed restitution.

4         2.      The Parties Conducted Extensive Discovery.

5         Since filing this action, Plaintiffs conducted extensive discovery relating to both the merits

6   and class certification, including reviewing and analyzing almost one million pages of documents

7   and data produced by Google. Declaration of Noah M. Schubert ("Schubert Decl.") ¶ 3. In total,

8   Plaintiffs propounded 71 document requests (over three sets) and 60 interrogatories (over six sets).

9   *Id.* Plaintiffs took the depositions of five Google employees and experts: Hal Varian, Courtney

10  Bowman, Jonathan Alferness, Michael Mothner, and Randolph E. Bucklin. *Id.* And Plaintiffs

11  produced numerous documents to Google, provided interrogatory responses, and sat for depositions.

12  *Id.* Discovery was often hotly contested, with both parties successfully moving to compel additional

13  discovery on several occasions. *See* Dkt. Nos. 125, 152, 174, 240. In connection with Plaintiffs'

14  motion for class certification, the parties exchanged initial expert reports and rebuttals, and each of

15  the parties' experts was deposed. Schubert Decl. ¶ 3. When the parties entered mediation in October

16  2016, Plaintiffs had substantially completed all merits and class certification discovery.

17         3.      Plaintiffs Won Pivotal Victories, Including Defeating the Motion to Dismiss
             and Reversing this Court's Denial of Class Certification in the Ninth Circuit.
18

19         On March 17, 2011, Judge Ware denied Google's motion to dismiss Plaintiffs' Third

20  Amended Complaint, holding that Plaintiffs had "adequately alleged a cause of action for fraud

21  under California law." Dkt. No. 235, p. 5.

22         On March 14, 2011, Plaintiffs moved to certify a nationwide class of Google AdWords

23  advertisers who had been charged for clicks on ads that Google placed on parked domains and error

24  pages. Google vigorously opposed the motion. Dkt Nos. 227, 272, 282. Following oral argument

25  and supplemental briefing ordered by the Court, on January 5, 2012, this Court denied class

26  certification. Dkt. Nos. 295-96, 307, 315. Plaintiffs moved for leave to file a motion for

27  reconsideration, which was also denied. Dkt. No. 326.

28

1   Plaintiffs subsequently petitioned the U.S. Court of Appeals for the Ninth Circuit for

2   permission to appeal the Court's denial of class certification under Federal Rule of Civil Procedure

3   23(f). Although such petitions are rarely successful, Plaintiffs' petition for permission to appeal was

4   granted. After three years of appellate proceedings, on September 21, 2015, the Ninth Circuit

5   reversed the Court's denial of class certification. It remanded the case for further proceedings.

6   *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 990 (9th Cir. 2015), 9th Cir. No. 12-

7   16752, Dkt. No. 39.

8   Google, however, sought further appellate review. It retained preeminent Supreme Court

9   specialist Neal Katyal of Hogan Lovells, who filed a petition for panel rehearing and rehearing *en*

10  *banc*. The U.S. Chamber of Commerce filed an amicus brief supporting Google's petitions for

11  rehearing. On December 8, 2015, the Ninth Circuit denied Google's petition, noting that no judge

12  requested a vote on whether to rehear the matter *en banc*. 9th Cir. No. 12-16752, Dkt. No. 59.

13  Following its loss in the Ninth Circuit, Google filed a petition for a writ of certiorari in the

14  U.S. Supreme Court. The Pacific Legal Foundation and Intel Corporation submitted amicus briefs

15  supporting Google's petition. Google argued that the Ninth Circuit's decision created a circuit split

16  and that the decision should be vacated and remanded in light of the U.S. Supreme Court's decision

17  in *Tyson Foods Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016). The U.S. Supreme Court

18  did not do either. On June 6, 2016, Google's petition for a writ of certiorari was denied.

19  The Ninth Circuit's decision in this action, holding that "damage calculations alone cannot

20  defeat certification," even after the U.S. Supreme Court's decision in *Comcast Corp. v. Behrend*,

21  133 S. Ct. 1426 (2013), was a landmark decision in class action jurisprudence. In the twenty months

22  since Plaintiffs' victory, the decision has been cited by forty-six courts (forty-four favorably), as

23  well as seven treatises and law-review articles. It is now the leading authority on the role of damages

24  at class certification in the Ninth Circuit.

25          4.      The Parties Engaged in Arm's-Length
                    Negotiations before a Highly Respected Mediator.
26

27  In February 2011, after the parties had engaged in the extensive class certification discovery,

28  they first explored a potential settlement. The parties entered mediation with the Hon. Layn R.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1    Phillips, U.S. District Judge (Ret.). At that time, Google's motion to dismiss the Third Amended

2    Complaint was pending, and the parties were in the process of briefing class certification. At that

3    early stage, the parties could not reach a settlement.

4         During the course of litigation concerning class certification and the subsequent appeal, the

5    parties engaged in further negotiations informally with Judge Phillips's assistance. The parties'

6    settlement positions, however, remained too far apart during these years. Following the Ninth

7    Circuit's reversal of the denial of class certification—and the Supreme Court's denial of Google's

8    petition for certiorari—the parties attended an in-person mediation with Judge Phillips. With the

9    mediator's assistance, the parties reached an agreement in principle, which they memorialized in a

10   binding term sheet. The parties then negotiated the precise settlement terms for nearly four months,

11   and, on February 23, 2017, the Settlement Agreement was finally executed.

12        **B.    The Court Granted Preliminary Approval of the Settlement.**

13        On March 9, 2017, the Court granted preliminary approval of the Settlement. Dkt. No. 369.

14   In that Order, the Court certified the following Settlement Class:

15             All persons or entities located within the United States who, from July 11,
               2004 through March 31, 2008, had an AdWords account with Google and
16             were charged for clicks on advertisements appearing on parked domains
               and/or error pages.
17

18        Under the terms of the Settlement, Google will create a $22.5 million non-reversionary cash

19   fund with four components: (1) Settlement Payments to Class Members who submit valid claims;

20   (2) a Fee and Expense Award to Class Counsel: (3) proposed Service Awards to each of the Class

21   Representatives; and (4) Notice and Administration Costs. Class Members will receive Settlement

22   Payments on a *pro rata* basis in accordance with the total amount they spent on ads that were placed

23   on parked domains and error pages during the Settlement Class Period.

24        The Court also approved notice and ordered dissemination to the Settlement Class.

25   Accordingly, in April 2017, the Court-approved Settlement Administrator, Analytics LLC, updated

26   the Settlement Website (www.AdWordsClassAction.com) to include the settlement notice, claim

27   form, and other important settlement documents. Schubert Decl. ¶ 17. On or about April 22, 2017,

28   Analytics completed the Court-approved notice plan by disseminating the Email Notice and mailing

Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards
Case No. 08-cv-03369-EJD                                                        6

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1   the supplemental Postcard Notice to Settlement Class Members whose Email Notices had bounced.

2   *Id.* On April 18, 2017. Class Counsel also issued a press release announcing the settlement. *Id.* The

3   deadline to request exclusion from the Settlement Class, object, or make a claim is June 21. 2017.

4       The preliminary approval order also appointed Robert C. Schubert and Noah M. Schubert of

5   Schubert Jonckheer & Kolbe LLP as Class Counsel and the named plaintiffs as Class

6   Representatives. It set the Final Approval Hearing for July 27, 2017, at which time the Court will

7   consider final approval of the Settlement and the instant motion. Dkt. No. 369.

8

9   **III.   ARGUMENT**

10      **A.    California Law Governs the Award of Attorneys' Fees and Costs.**

11      Counsel who recover a common fund that confers a "substantial benefit" on a class of

12   beneficiaries are "entitled to recover their attorney's fees from the fund." *Fischel v. Equitable Life*

13   *Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002): *see also Serrano v. Priest*. 20 Cal.

14   3d 25, 35-38 (1977). Likewise, Federal Rule of Civil Procedure 23(h) authorizes the Court to "award

15   reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties'

16   agreement." Fed. R. Civ. Proc. 23(h). And the Settlement Agreement provides that Class Counsel's

17   reasonable attorneys' fees and expenses will be paid from the $22.5 million settlement fund, subject

18   to this Court's approval. Settlement Agreement, § 8.1.

19      Plaintiffs' operative complaint seeks restitution on behalf of a nationwide class of AdWords

20   advertisers based on California law, the UCL and FAL. Under the Class Action Fairness Act of 2005

21   ("CAFA"), the Court has diversity jurisdiction over these state law claims. 28 U.S.C. § 1332(d); *see*

22   *also* Dkt. No. 166. ¶ 18. Under these circumstances, where the asserted and settled counts are state

23   law claims over which a federal court has exercised diversity jurisdiction, any fee award must be

24   calculated under substantive state law (here, California). *Emmons v. Quest Diagnostics Clinical*

25   *Labs, Inc.*, 2017 U.S. Dist. LEXIS 27249, at *19 (E.D. Cal. Feb. 24, 2017); *Mangold v. California*

26   *Public Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has

27   applied state law in determining not only the right to fees, but also in the method of calculating

28   fees."); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043. 1047 (9th Cir. 2002).

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**C.     The Requested Fee Award of $6,500,000 is Fair, Reasonable, and Justified.**

The California Supreme Court recently held that courts have discretion to choose among two different methods of calculating a reasonable attorneys' fee award under California law. *See Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 504 (2016) ("The choice of a fee calculation is generally one within the discretion of the trial court ..."). Ultimately, in evaluating a request for attorneys' fees, whether one employs a lodestar approach or the percentage-of-the-fund method, "[r]easonableness is the goal." *Fischel*, 307 F.3d at 1007; *Laffitte*, 1 Cal. 5th at 504 ("[T]he goal under either the percentage or lodestar approach [is] the award of a reasonable fee to compensate counsel for their efforts."). Regardless of the approach selected here, Plaintiffs' $6.5 million fee request is clearly reasonable.

1.     The Fee Award—Representing a Fractional Multiplier of Class
       Counsel's Lodestar—Is Unquestionably Fair and Reasonable.

Under the lodestar method, the Court calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate for the region and for the experience of the lawyers—and then enhances that figure, if appropriate, under the unique circumstances presented by the action. *Laffitte*, 1 Cal. 5th at 489; *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Although in most cases the lodestar figure is a "presumptively reasonable" fee award, courts may "adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (internal citations omitted); *see also Laffitte*, 1 Cal. 5th at 489. The Court may also consider awards made in similar cases and the preclusion of the attorneys' other employment due to acceptance of the case. *In re Optical Disk Drive Prods. Antitrust Litig.*, 2016 U.S. Dist. LEXIS 175515, at *57 (N.D. Cal. Dec. 19, 2016).

As described below, the amount of attorneys' fees sought here is significantly less than Class Counsel's lodestar, strongly supporting the reasonableness of the request.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

a. *Class Counsel's Hourly Rates are Reasonable.*

Class Counsel has submitted detailed lodestar itemizations and breakdowns for itself and each of the law firms it tasked with assignments in this litigation. *See* Schubert Decl. ¶ 13; Declaration of Robert M. Foote ("Foote Decl."), ¶ 3; Declaration of Adam C. Belsky ("Belsky Decl."), ¶ 3; Declaration of Kimberly A. Kralowec ("Kralowec Dec."), ¶ 3.[3] To determine the appropriate lodestar amount, courts first assess the reasonableness of the attorneys' hourly billing rates. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). In considering the reasonableness of hourly rates, courts examine the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895, n. 11 (1984); *Camacho*, 523 F.3d at 979. To meet their burden, counsel may rely on several sources, including their own declarations and "rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney," which constitute "satisfactory evidence of the prevailing market rate." *In re Animation Workers Antitrust Litig.*, 2016 U.S. Dist. LEXIS 156720, at *20 (N.D. Cal. Nov. 11, 2016). In calculating lodestar, courts generally apply each biller's current rates for all hours of work performed, regardless of when the work occurred, as a means of compensating for the deferred nature of counsel's work. *See, e.g., Fischel* 307 F.3d at 1010; *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994).

Here, Class Counsel's hourly rates are well within those prevailing in the community. The Northern District frequently recognizes similar—and indeed higher—hourly rates as reasonable in the San Francisco Bay Area. For instance, in *In re High-Tech Employee Antitrust Litig.*, 2015 U.S. Dist. LEXIS 118052 (N.D. Cal. Sept. 2, 2015), in connection with an award of attorneys' fees in a settlement, Judge Lucy H. Koh approved the following billing rates as a reasonable reflection of the prevailing attorney hourly rates in this District for class action work: partners ranging from $490 to $975; non-partner attorneys (such as senior counsel, senior associates, associates, and staff attorneys) ranging from $310 to $800 (with most under $500); and other staff (paralegals, law clerks and

---

[3] The resume of each of these law firms, summarizing the backgrounds and experience of their current attorneys, is attached as an exhibit to their respective declaration.

litigation support) ranging from $190 to $430 (with most in the $300 range). *Id.* at **33-34. Similarly, in *Gutierrez v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 67298 (N.D. Cal. May 21, 2015), Judge William Alsup approved hourly partner rates ranging from $475 to $975, associate rates between $300 and $475, paralegal rates between $150 and $430, and litigation support rates between $250 and $340. *Id.* at **14-15. Judge Alsup based this decision on the fact that "counsel waited patiently for payment for several years" and that "many of the claimed rates were comparable to those in our geographic region for the skill and experience involved." *Id.* at *14. In *Beaver Cnty. Emples. Ret. Fund v. Tile Shop Holdings, Inc.*, 2017 U.S. Dist. LEXIS 15018 (N.D. Cal. Feb. 2, 2017), Magistrate Judge Jacqueline Scott Corley approved similar ranges of hourly rates for partners, associates, and paralegals. *Id.* at *4. Comparable rates have also met unconditional approval by the Ninth Circuit in cases that predate this motion by several years. *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010).

Class Counsel's hourly rates (and the rates of its supporting counsel) here range: (i) for partners and of counsel attorneys, from $600-$900; (ii) for associates, project attorneys, and consulting counsel, from $350-$750; and (iii) for paralegals, law clerks, and other litigation support staff, from $150-$350. All of these rates are consistent with the recent fee decisions cited above. Furthermore, numerous other courts in this District and elsewhere have approved the same rates requested by Class Counsel here. *See* Schubert Decl., ¶ 10; Foote Decl., ¶ 8; Belsky Decl., ¶ 8; Kralowec Decl., ¶ 8. For instance, Schubert Firm senior partner Robert C. Schubert's $900 hourly rate (the highest rate within the lodestar records) is the same hourly rate that Magistrate Judge Donna M. Ryu approved in 2015 in connection with a Telephone Consumer Protection Act ("TCPA") class action. *True Health Chiropractic, Inc. v. McKesson Corp.*, No. 13-cv-2219-HSG (N.D. Cal.), Dkt. No. 198. In January 2016, Judge Jack Zouhary also approved Mr. Schubert's $900 rate in the polyurethane foam antitrust class action, *In re Polyurethane Foam Antitrust Litig.*, No. 10-md-2196 (N.D. Ohio).

Indeed, for complex class action litigation, the market rates for defense firms defending these actions—including Cooley LLP, which represents Google—often exceed the rates sought here. *See National Law Journal*, Billing Rates Across the Country, http://www.nationallawjournal.com/

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1   id=1202636785489/Billing-Rates-Across-the-Country (last visited May 3, 2017) (reflecting that, in

2   2014, the average Cooley LLP partner's billable rate was $820 per hour, with a high of $990, and

3   associates averaged $525).

4        Accordingly, Class Counsel's billable rates are reasonable, commensurate with the

5   prevailing market rates in the San Francisco Bay Area.

6             b.   *The Hours Billed by Class Counsel Are Reasonable.*

7        Since the litigation began in 2008, Class Counsel has billed 14,270.4 hours, totaling

8   $7,978,519 in attorneys' fees to date. Schubert Decl. ¶ 7. To maximize the Settlement Class

9   Members' recovery, Class Counsel conducted an extensive review of its billing records, including

10  the records of each of the supporting firms, in connection with this motion. *Id.* Class Counsel closely

11  reviewed its own and each supporting firm's daily, contemporaneous timekeeping records. As a

12  result of this review, Class Counsel removed billing entries for work performed: (i) by attorneys or

13  staff that was not directly related to tasks specifically requested or assigned by Class Counsel; (ii)

14  that was not otherwise directly necessary for the effective prosecution and resolution of this case;

15  (iii) or that was potentially duplicative of work performed by others. For instance, time records in

16  which attorneys read and reviewed court filings (when not tasked with a specific assignment from

17  Class Counsel in connection with those filings) were removed. Additionally, billing records for work

18  performed by firms other than Class Counsel prior to the Court's February 25, 2009 Order

19  consolidating the underlying actions (Dkt. No. 40) were stricken. As a result, Class Counsel has

20  eliminated 1,773.8 hours—amounting to $976,393 in attorneys' fees—in connection with its request

21  for reasonable attorneys' fees.

22       Accordingly, Class Counsel's cumulative revised lodestar for purposes of this fee motion is

23  $7,002,126, reflecting 12,496.6 hours prosecuting this litigation. Schubert Decl. ¶ 11. These figures

24  do not include time spent in connection with this motion for an award of attorneys' fees or any of

25  the additional time that will be incurred in connection with settlement approval, implementation of

26  the settlement, final resolution of this action, or any future appeal.

27       Class Counsel's $6.5 million requested fee is less than its total lodestar of $7.98 million and

28  even its revised lodestar of $7.00 million, after eliminating all unnecessary or duplicative entries,

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1  further supporting the reasonableness of the request. All of the time reported in connection with this

2  motion was incurred for the benefit of Plaintiffs and the Settlement Class and was reasonably

3  necessary for the effective resolution of this case.[4]

4         The tasks performed, and hours incurred performing them, "adequately reflect the amount of

5  time reasonably spent on this litigation," as documented in Class Counsel's and the supporting firms'

6  accompanying declarations. *See In re High-Tech Emple. Antitrust Litig.*, 2015 U.S. Dist. LEXIS

7  118052, at *9. The work performed to advance the litigation and ultimately secure the favorable

8  settlement was meaningful, complex, and undoubtedly called for significant investments of time and

9  resources. Wherever possible, Class Counsel sought to avoid any duplication of work and tasks and

10 ensure efficiency. Schubert Decl. ¶ 3. Class Counsel and the supporting firms performed the

11 following tasks, among others:

12     *Class Certification*

13       • Researched, briefed, and argued motion for class certification

14       • Researched and drafted supplemental briefs for class certification

15       • Researched and briefed motion for reconsideration of denial of class certification

16       • Researched, briefed, and argued motion to strike expert declaration opposing class

17         certification

18       • Researched, briefed, and argued supplemental expert disclosures

19       • Worked extensively with economic experts on damages model for class certification

20       • Prepared for and defended the deposition of Plaintiffs' damages expert

21       • Deposed five Google fact and expert witnesses for class certification

22       • Prepared for and defended the depositions of the four named plaintiffs

23     *Appellate Practice*

24       • Researched and drafted Ninth Circuit petition for permission to appeal

25       • Researched, briefed, and argued Ninth Circuit appeal of class certification denial

26

27 [4] Class Counsel obtained authorization from each of the supporting firms to lodge their daily time

28 records for the Court's inspection, if the Court so requests.

Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards
Case No. 08-cv-03369-EJD

12

- Researched and prepared for Ninth Circuit petition for rehearing *en banc*
- Researched and briefed opposition to certiorari petition in U.S. Supreme Court

*Motion Practice & Case Management*

- Researched and drafted numerous consolidated and amended complaints
- Researched and drafted motions to consolidate and relate cases
- Drafted case management statements and appeared at case management conferences
- Briefed and argued motion for leave to file amended complaint
- Briefed and argued motion to dismiss amended complaint

*Discovery Practice*

- Reviewed and analyzed nearly one million pages of Google documents
- Negotiated and drafted expert discovery orders and stipulated protective order
- Briefed and argued numerous motions to compel discovery responses
- Propounded six sets of interrogatories to Google and numerous document requests
- Responded to numerous interrogatories and document requests from Google

*Settlement Negotiations & Approval*

- Drafted mediation briefs and engaged in two in-person mediations
- Negotiated and drafted Settlement Agreement
- Briefed and argued motion for preliminary approval of settlement
- Managed the form and dissemination of notice with the settlement administrator

The above list represents only a summary of the major events and tasks on which Class Counsel expended significant hours. For a complete list of each of the principal events and tasks undertaken by Class Counsel, see Schubert Decl., ¶ 4.

Generally, hours are considered "reasonable if they were 'reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee paying client.'" *Carnes v. Atria Senior Living, Inc.*, 2016 U.S. Dist. LEXIS 182751, at *5 (N.D. Cal. July 12, 2016) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983)). The work described above, along with the litigation efforts discussed in Class Counsel's accompanying declarations, easily satisfies this standard.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

c.   *Although Not Requested, Class Counsel*
*Would Be Entitled to a Lodestar Multiplier.*

Class Counsel's revised lodestar for purposes of this fee motion is $7,002,126. Schubert Decl., ¶ 11. As counsel has requested only $6.5 million in fees (i.e., less than 93% of their lodestar), a multiplier is not currently requested, although the facts amply support such an enhancement. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942. In the event that the hours billed or rates submitted by Class Counsel were deemed excessive, the factors supporting a multiplier are briefly set forth below. That is, even if Class Counsel's revised lodestar were further reduced, it would still be entitled to a lodestar multiplier that justifies the fee award sought here.

California law also governs whether to award a lodestar multiplier in this case and the relevant factors. *See Mangold*, 67 F.3d at 1478-79. When applying the lodestar-based approach under California law, counsel's lodestar may be adjusted upward based on factors such as (i) the novelty or difficulty of the questions involved, (ii) the expertise and capability of counsel, (iii) the results obtained, and (iv) the extent to which the litigation precluded other employment by the attorneys. *Fortson v. Marriott Int'l, Inc.*, 2013 U.S. Dist. LEXIS 62496, at *6, n. 4 (N.D. Cal. May 1, 2013) (citing *Serrano v. Priest*, 20 Cal. 3d 25, 48-49 (1977)). In California courts, "[m]ultipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation." *Emmons*, 2017 U.S. Dist. LEXIS 27249, at *19 (further noting that a multiplier of approximately 1.7 "is on the low end of acceptable potential modifiers").

Here, the relevant factors all support a lodestar multiplier under California law.[5] Class Counsel undertook this case solely on a contingent-fee basis. For the eight years in which this case has been pending, counsel have not been paid and never obtained any guarantee of receiving compensation. Schubert Decl. ¶ 16; Foote Decl. ¶ 11; Belsky Decl. ¶ 11; Kralowec Decl. ¶ 11. Google's zealous defense of this action further compounded this uncertainty and risk. For instance, Google vigorously (and successfully) opposed Plaintiffs' class certification motion, and even upon being handed a defeat in the Ninth Circuit, sought an *en banc* rehearing and filed a petition for a writ

---

[5] Because courts also consider several of these factors in determining whether an upward adjustment to a "benchmark" percentage-of-the-fund fee award is appropriate, the factors are more thoroughly discussed in §III(C)(3), *infra*.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1   of certiorari in the U.S. Supreme Court. Google also indicated its intention to move to decertify the

2   class, based on purported changes in relevant class action jurisprudence, threatening to unwind

3   Plaintiffs' hard-fought victory in the Ninth Circuit. *See* Dkt. No. 353. Class Counsel's significant

4   out-of-pocket expenses also reflects the complexity of the legal issues presented and the real risk

5   undertaken in prosecuting this matter on a contingent fee basis. And it cannot be questioned that

6   Class Counsel obtained an outstanding result for the Settlement Class Members or that Class Counsel

7   are experienced and highly regarded members of the bar.

8        Accordingly, although no positive lodestar multiplier is sought, such an enhancement would

9   plainly be justified, further supporting the reasonableness of the fee request.

10            2.    A Percentage-of-the-Fund "Cross Check" Confirms
                     the Reasonableness of Class Counsel's Fee Request.

12                  *a.  The Requested Fees Are Reasonable Under California Law.*

13        California has no percentage-of-the-fund benchmark for awarding attorneys' fees in common

14   fund cases. *See Emmons*, 2017 U.S. Dist. LEXIS 27249. at **19-20. In discussing the California

15   Supreme Court's recent *Laffitte* decision, the court in *Emmons* explained, "Notably, while the

16   California Supreme Court recognized the Ninth Circuit's 25 percent benchmark for percentage

17   awards in common fund cases, it did not adopt such a benchmark for California cases." *Id.* Rather,

18   California courts routinely award attorneys' fees equaling one-third of the fund's value. *Laffitte*, 1

19   Cal. 5th at 487 (reflecting lower court's award of 33 1/3% of common fund as attorneys' fees); *Smith*

20   *v. CRST Van Expedited, Inc.*, 2013 U.S. Dist. LEXIS 6049, at *13 (S.D. Cal. Jan. 14, 2013)

21   ("California has recognized that most fee awards based on either lodestar or percentage calculation

22   are 33 percent"). Here, the $6.5 million fee request amounts to approximately 28.9% of the

23   Settlement Fund, a percentage significantly below that awarded by other California courts.

24                  *b.  Plaintiffs' Fee Request Is Reasonable Under Ninth Circuit
                         Precedent and Consistent with Fee Awards in Comparable Cases.*

26        Although this motion is governed by California law, Plaintiffs' fee request is also reasonable

27   under federal law. While the so-called "benchmark" percentage-of-the-fund award sometimes

28   referenced by the Ninth Circuit in non-diversity actions is 25%, the Ninth Circuit has repeatedly

Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards
Case No. 08-cv-03369-EJD                                                                    15

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1    cautioned that this is a mere "starting point" from which an upward departure of the modest

2    magnitude involved here is often justified and reasonable, particularly in complex class actions.

3    *Vizcaino*, 290 F.3d at 1048 ("The 25% benchmark rate, although a starting point for analysis, may

4    be inappropriate in some cases. Selection of the benchmark or any other rate must be supported by

5    findings that take into account all of the circumstances of the case.").

6       Following this directive, numerous Ninth Circuit decisions, as well as orders from California

7    federal district courts, have approved a percent-of-the-fund award commensurate with (or higher

8    than) the 28.9% requested here. Indeed, the "exact percentage [awarded] varies depending on the

9    facts of the case, and in most common fund cases, the award exceeds that [25%] benchmark."

10   *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010); *Hopkins v. Stryker*

11   *Sales Corp.*, 2013 U.S. Dist. LEXIS 16939, at *3 (N.D. Cal. Feb. 6, 2013) ("this court's review of

12   recent reported cases discloses that nearly all common fund awards range around 30%") (citation

13   omitted).

14       Percentages comparable or higher than the 28.9% requested here were approved in: *Brown*

15   *v. Hain Celestial Grp., Inc.*, 2016 U.S. Dist. LEXIS 20118, at *24 (N.D. Cal. Feb. 18, 2016) (38%);

16   *Keller v. NCAA*, 2015 U.S. Dist. LEXIS 166546, at *32 (N.D. Cal. Dec. 10, 2015) (29% and 30%

17   from two separate settlement funds); *In re Optical Disk Drive Antitrust Litig.*, No. 10-md-2143 (N.D.

18   Cal. July 23, 2015) (30%); *Hopkins*, 2013 U.S. Dist. LEXIS 16939 (30%); *Barbosa v. Cargill Meat*

19   *Sols. Corp*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) (33 1/3 %); *Konstantinos Moshogiannis v. Sec.*

20   *Consultants Grp., Inc.*, No. 10-cv-5971 (N.D. Cal. Jun 19, 2012) (30%); *Vizcaino*, 290 F.3d at 1052

21   (28%); *Moore v. PetSmart, Inc.*, 2015 U.S. Dist. LEXIS 102804, at *35 (N.D. Cal. Aug. 4, 2015)

22   (27%); *Boyd v. Bank of Am. Corp.*, 2014 U.S. Dist. LEXIS 162880, at *33 (C.D. Cal. Nov. 18, 2014)

23   (33 1/3%).

24          3.    Other Factors Support Plaintiffs' Fee Request

25       California courts and the Ninth Circuit both recognize that the following factors are relevant

26   in evaluating the reasonableness of fees requested under either approach.

27

28

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

a. *Class Counsel Achieved an Excellent
Result on a Purely Contingent Basis.*

Courts consistently acknowledge that the result achieved is an important factor in approving a fee award. *Hensley*, 461 U.S. at 436 ("most critical factor is the degree of success obtained"); *Vizcaino*, 290 F.3d at 1048 ("[e]xceptional results are a relevant circumstance" in awarding attorneys' fees); *Glendora v. Cmty. Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465, 475 (1984); *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 40 (2000); *In re Omnivision Techs.*, 559 F. Supp. 2d, 1036, 1046 (N.D. Cal. 2007).

The $22.5 million non-reversionary settlement achieved here represents an excellent result for the Class, particularly in light of the risks posed by Google's anticipated motion to decertify the class, summary judgment, or a smaller recovery if the case continued through trial or subsequent appeals. As discussed above, the Settlement amounts to between 29.2% and 50% of the relief that Plaintiffs estimate could have been recovered at trial, assuming that Plaintiffs prevailed on the merits and on damages, which were vigorously disputed by Google. The settlement provides immediate financial benefits to Settlement Class Members. Absent this settlement, Plaintiffs faced substantial risks at trial, plus years of appeals thereafter, with no guarantee of greater recovery.

b. *Class Counsel Bore Substantial Risk by
Litigating this Difficult and Complex Case.*

The risk of nonpayment of expenses and attorneys' fees is also a relevant factor in assessing the reasonableness of a proposed award. *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *16 (C.D. Cal. June 10, 2005). As reflected above, the litigation presented numerous and serious risks, any of which could have resulted in Class Counsel recovering nothing for their work, further supporting the fee request. *See Vizcaino*, 290 F.3d at 1048 (awarding above the benchmark where, as here, class counsel "succeeded in reviving their case on appeal"). Class Counsel's further outlay of $750,645.43 in litigation expenses indicates the high stakes of this litigation. These expenses included the high costs of retaining experts on key class certification and damages issues, retaining litigation consultants in connection with Plaintiffs' class certification appeal, retaining a highly experienced mediator, electronically hosting Google's massive document production, conducting

1   legal research, and deposing Google's witnesses and experts. "Small firms" such as Class Coun,

2   with fewer than fifteen attorneys each, "face even greater risks in litigating large class actions with

3   no guarantee of payment." *Boyd*, 2014 U.S. Dist. LEXIS 162880, at \*28.

4       In addition to their out-of-pocket expenses, Class Counsel devoted significant resources of

5   time, energy, and effort to prosecute the case on a fully contingent basis, with no guarantee that they

6   would ever be paid. The contingent nature of this work—and the risk Class Counsel assumed in

7   advancing these significant costs—weigh strongly in favor of granting the fee request. *See Barbosa*,

8   297 F.R.D. at 449 ("Like this case, where recovery is uncertain, an award of one-third of the common

9   fund as attorneys' fees has been found to be appropriate."); *see also Graham v. Daimler Chrysler*

10  *Corp.*, 34 Cal. 4th 553, 580 (2004) ("A contingent fee must be higher than a fee for the same legal

11  services paid as they are performed. The contingent fee compensates the lawyer not only for the

12  legal services he renders but for the loan of those services.").

*            c.  Class Counsel Handled the Difficult Factual*
*              and Legal Issues with Skill and Success.*

15       Class Counsel, as well as supporting counsel, have special expertise in consumer class

16  actions and complex litigation, including ample experience litigating and settling cases involving

17  unfair business practices. *See* Schubert Decl. ¶ 2 & Ex. A; Foote Decl. ¶ 2 & Ex. A; Kralowec Decl.

18  ¶ 2 & Ex. A; Belsky Decl. ¶ 2 & Ex. A. Together, they skillfully performed the work necessary to

19  pursue the class claims, overcame the risks described above, and achieved an excellent result for the

20  Class. The skill displayed in successfully opposing Google's motion to dismiss and winning their

21  appeal of class certification denial in the Ninth Circuit is particularly noteworthy. As explained

22  earlier, Class Counsel not only achieved a major victory for the Class but also established the leading

23  precedent on damages at class certification in the Ninth Circuit.

24       Indeed, that Google petitioned for rehearing *en banc* in the Ninth Circuit followed by

25  certiorari in the U.S. Supreme Court further reflects the significance of Plaintiffs' accomplishment.

26  Google's certiorari petition drew national press attention for its ramifications on class action

27  jurisprudence. *See, e.g.,* Alison Frankel, *Scalia's Comcast legacy is at stake in Google Adwords*

28  *case*, Reuters, (May 3, 2016), http://blogs.reuters.com/alison-frankel/2016/05/03/scalias-comcast-

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards
Case No. 08-cv-03369-EJD

18

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1   legacy-is-at-stake-in-google-adwords-case/; Lawrence Hurley, *U.S. Supreme Court lets Google*

2   *advertising class action suit proceed*, Reuters, (June 6, 2016), http://www.reuters.com/article/us-

3   usa-court-google-idUSKCN0YS1GI. As a result, the *Pulaski & Milddleman* decision, holding that

4   "damages calculations alone cannot defeat class certification," even after *Comcast*, stands as the

5   preeminent authority in the Ninth Circuit.

6         *d.   Class Counsel's Work in this Case Precluded*
             *Their Employment on Other Matters.*
7

8         The eight-year-long battle to achieve this Settlement prevented Class Counsel from pursuing

9   other work that might well have been as or more rewarding than this case. *See* Schubert Decl. ¶ 16;

10  Foote Decl. ¶ 11; Kralowec Decl. ¶ 11; Belsky Decl. ¶ 11. Though they are small firms, Class

11  Counsel, as well as the supporting firms, possess significant, unique experience and expertise in

12  class actions and have the ability to handle complex cases nationwide. This class action, in which

13  over 14,000 hours were expended, necessarily limited Class Counsel's availability to undertake other

14  matters, further demonstrating the reasonableness of the fee request.

15        *e.   The Benefits to the Public Achieved*
             *by Class Counsel Support the Fee Request.*
16

17        The public interest served by this settlement also supports the fee award Class Counsel seeks.

18  *State v. Meyer*, 174 Cal. App. 3d 1061, 1074 (1985) ("the public service element, and motivation to

19  represent consumers and enforce laws" is a factor in determining the reasonableness of a fee request);

20  *Lealao*, 82 Cal. App. 4th at 41 ("this kind of consumer class action would not be pursued by counsel

21  but for the expectation of receiving enhanced fee awards in successful cases"). The California

22  Supreme Court has found that "[p]rotection of unwary consumers from being duped by unscrupulous

23  sellers is an exigency of the utmost priority in contemporary society." *Vasquez v. Superior Court*, 4

24  Cal. 3d 800, 808 (1971). Likewise, the public benefit of class actions in cases alleging fraud

25  involving small sums on an individual basis is well-recognized. "The policy at the very core of the

26  class action mechanism is to overcome the problem that small recoveries do not provide an incentive

27  to bring a solo action prosecuting his or her right. A class action solves this problem by aggregating

28  the relatively paltry potential recoveries into something worth someone's (usually an attorney's)

1    labor." *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 156-57 (2005). Without commensurate

2    fee awards, the incentive to undertake high-stakes consumer class action litigation, as here, could be

3    lost.

4       **D.**   **Class Counsel's Reasonable Out-Of-Pocket Expenses Incurred in This Litigation Should be Reimbursed.**

5       In the course of this litigation, Class Counsel, as well as supporting counsel, incurred

6    significant, unreimbursed expenses and costs totaling $750,645.43. *See* Schubert Decl. ¶¶ 15

7    (tabulating expenses for the firms).[6] Despite the significant burden of carrying these unreimbursed

8    expenses, Class Counsel believed that they were necessary to zealously litigate this action for the

9    Class. Both California and the Ninth Circuit, as well as Federal Rule of Civil Procedure 23(h), allow

10   recovery of litigation costs in class action settlements. *See Staton v. Boeing Co.*, 327 F.3d 938, 974

11   (9th Cir. 2003); *Serrano*, 20 Cal. 3d at 35 (reimbursement of costs from a common fund is grounded

12   in courts' historic power of equity); Fed. R. Civ. Proc. 23(h) ("the Court may award reasonable

13   attorneys' fees and nontaxable costs that are authorized by law or the parties' agreement").[7] Here

14   too, Class Counsel seeks *less than* their actual incurred costs, thereby maximizing payments to the

15   Settlement Class.

16      "An attorney seeking an expense award should file an itemized list of his or her expenses by

17   category, listing the total amount advanced for each category, allowing the Court to assess whether

18   the expenses are reasonable." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 U.S. Dist. LEXIS

19   5383, at *170 (N.D. Cal. Jan. 14, 2016). As reflected in the following chart, the bulk of the expenses

20   comprise fees paid to Plaintiffs' class certification and damages experts, Stan V. Smith, Ph.D. and

21   Robert Kneuper, Ph.D., who wrote extensive reports, reviewed relevant documents, provided

22   valuable testimony, and regularly consulted with Class Counsel. In fact, it was these experts' reports

23

24

25   [6] The expense breakdown for Class Counsel, as well as each of the supporting firms, is set forth in

26   each firms' accompanying declarations. *See* Schubert Decl. ¶13; Foote Decl. ¶ 10; Belsky Decl. ¶ 10; Kralowec Decl. ¶ 10.

27   [7] The Settlement Agreement provides that these expenses would be sought as part of any fee award

28   and be payable from the settlement fund. *See* Settlement Agreement, § 8.1.

Schubert Jonckheer & Kolbe LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1   that ultimately allowed the Ninth Circuit to conclude that Plaintiffs had offered a reasonable method

2   of calculating restitution. *See Pulaski & Middleman, LLC*, 802 F.3d at 988-89.

3       Plaintiffs also paid considerable sums to online discovery vendors to host Google's massive

4   document production, incurred significant costs associated with two mediations in this action, and

5   paid substantial fees to critical litigation consultants Myron Moskovitz (in connection with

6   Plaintiffs' successful appellate argument in the Ninth Circuit) and David C. Frederick of Kellogg

7   Hansen Todd Figel & Frederick PLLC (in connection with successfully opposing Google's petition

8   for a writ of certiorari in the U.S. Supreme Court). Schubert Decl. ¶ 13-14.

| Expense Category | Totals |
|---|---|
| Alternative Dispute Resolution / Mediation | $34,505.00 |
| Experts | $505,521.82 |
| FedEx | $1,861.03 |
| Filing Fees | $2800.00 |
| In-House Copies / Reproduction / Appellate Binding | $14,891.66 |
| Legal Research (PACER, Lexis, Westlaw) | $32,503.63 |
| Litigation Consultant Fees | $20,032.06 |
| Messenger / Courier | $4,125.05 |
| Online Document Production Hosting Charges | $93,718.78 |
| Postage | $212.60 |
| Process Service | $170.00 |
| Telephone / Facsimile | $2,509.12 |
| Transcripts | $14,425.45 |
| Travel-Related Expenses | $23,369.23 |
| **Expense Totals** | **750,645.43** |

27       These expenses were reasonably necessary for the prosecution of this action. They were

28   incurred by Class Counsel for the benefit of the Class with no guarantee that they would be

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 784-0220

1   reimbursed during the eight-year prosecution of this action. *See* Schubert Decl. ¶¶ 13, 16; Foote

2   Decl. ¶ 11; Belsky Decl. ¶ 11; Kralowec Decl. ¶ 11. Additionally, these expenses are all of the type

3   that would normally be charged to a fee paying client. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th

4   Cir. 1994); *see also Destefano v. Zynga, Inc.*, 2016 U.S. Dist. LEXIS 17196, at *73 (N.D. Cal. Feb.

5   11, 2016) (identifying recoverable expenses as including photocopying, printing, postage, court

6   costs, research on online databases, experts and consultants, travel, and meals). Further, the amounts

7   are reasonable in light of the highly contentious complex nature of this eight-year-long class action.

8   Accordingly, the Court should grant Class Counsel's request for reimbursement of $700,000 in

9   litigation expenses.

10      **E.**    **The Class Representative Service Awards Are Fair,**

11           **Reasonable, and Justified, and Should be Approved.**

12      Courts routinely allow service (or incentive) awards to class representatives as compensation

13   for a plaintiff undertaking the risk and expending the time to advance the interests of a class. *See*

14   *Rodriquez v. West Pub. Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *Vasquez v. Coast Valley*

15   *Roofing, Inc.*, 266 F.R.D. 482, 490 (E.D. Cal. 2010).

16      Here, Class Representatives JIT, RK West, and Oesterling each seek approval of a $5,000

17   service award. As detailed in their accompanying declarations, these Class Representatives regularly

18   communicated with Class Counsel and supporting counsel during the course of this eight-year-long

19   litigation. The Class Representatives answered questions, produced documents, researched and

20   verified discovery responses, confirmed the accuracy of fact allegations, and provided valuable

21   testimony at their day-long depositions. *See* Declaration of Richard Oesterling ("Oesterling Decl."),

22   ¶ 4; Declaration of Russell Kovner ("Kovner Decl."), ¶ 4; Declaration of Michael Hrbacek

23   ("Hrbacek Decl."), ¶ 4. Prior to deciding to bring suit, JIT, RK West, and Oesterling considered the

24   attendant commitments inherent in pursuing this class action, and each fully embraced the

25   responsibilities and duties. Oesterling Decl., ¶¶ 2-3; Kovner Decl., ¶¶ 2-3; Hrbacek Decl., ¶¶ 2-3.

26   Importantly, none of these Class Representatives conditioned their agreement to the proposed

27   settlement on receiving any service or incentive award for their role as a Class Representative.

28   Oesterling Decl., ¶ 5; Kovner Decl., ¶ 5; Hrbacek Decl., ¶ 5.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1   This Court has previously found that similar service awards are "presumptive reasonable"

2   under the same circumstances presented here. *See, e.g., In re Google Referrer Header Privacy Litig.,*

3   87 F.Supp.3d 1122, 1137 (N.D. Cal. 2015) (approving $5,000 incentive awards as "presumptively

4   reasonable" where the named plaintiffs "assumed the responsibilities and burdens of acting as

5   representatives in this lawsuit, including providing documents, verifying allegations, and consulting

6   with counsel"). Here, each of the Class Representatives' involvement in this litigation proved

7   invaluable to Class Counsel's efforts and merits recognition. Plaintiffs' requested $5,000 service

8   awards to JIT, RK West, and Oesterling should be approved.

9

10   **IV.   CONCLUSION**

11   For the foregoing reasons, Plaintiffs respectfully request that this Court grant their Motion

12   for (1) An Award of Attorneys' Fees, (2) Reimbursement of Costs and Expenses, and (3) Service

13   Awards. A proposed order is submitted herewith.

14

15   Dated: May 8, 2017                        **SCHUBERT JONCKHEER & KOLBE LLP**

16                                              /s/ Noah M. Schubert

17

18                                              ROBERT C. SCHUBERT
                                                (rschubert@sjk.law)
19                                              NOAH M. SCHUBERT
                                                (nschubert@sjk.law)
20                                              Three Embarcadero Center, Suite 1650
                                                San Francisco, CA 94111
21                                              Telephone:    (415) 788-4220
                                                Facsimile:    (415) 788-0161
22

23                                              *Class Counsel*

24

25

26

27

28

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

Filing # 109473655 E-Filed 06/26/2020 02:44:47 PM

1  ROBERT C. SCHUBERT (S.B.N. 62684)
2  (rschubert@schubertlawfirm.com)
   NOAH M. SCHUBERT (S.B.N. 278696)
3  (nschubert@schubertlawfirm.com)
   **SCHUBERT JONCKHEER & KOLBE LLP**
4  Three Embarcadero Center, Suite 1650
   San Francisco, California 94111
5  Telephone:      (415) 788-4220
   Facsimile:       (415) 788-0161
6

7  *Class Counsel*

8  ROBERT M. FOOTE
   (rmf@fmcolaw.com)
9  KATHLEEN C. CHAVEZ
   (kcc@fmcolaw.com)
10 **FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC**
11 10 West State Street, Suite 200
   Geneva, Illinois 60134
12 Telephone:      (630) 232-7450

13
   *Additional Counsel for Plaintiffs*
14

15         **UNITED STATES DISTRICT COURT**

16        **NORTHERN DISTRICT OF CALIFORNIA**

17              **SAN JOSE DIVISION**

18

19 IN RE GOOGLE ADWORDS LITIGATION     **Case No.  08-cv-3369-EJD**

20                                     **DECLARATION OF ROBERT M. FOOTE
                                       IN SUPPORT OF PLAINTIFFS' MOTION**
21                                     **FOR (1) AN AWARD OF ATTORNEYS'
                                       FEES, (2) REIMBURSEMENT OF COSTS**
22                                     **AND EXPENSES, AND (3) INCENTIVE
                                       AWARDS**
23

24                                     Date:         July 27, 2017
                                       Time:         9:00 a.m.
25                                     Judge:        Hon. Edward J. Davila
                                       Courtroom:    4, 5th Floor
26

27                                     Action Filed:  July 11, 2008

28

Declaration of Robert M. Foote in Support of Plaintiffs' Motion for (1) An Award of Attorneys' Fees, (2)
Reimbursement of Costs and Expenses, and (3) Incentive Awards
Case No. 08-cv-03369-EJD

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

I, Robert M. Foote, hereby declare as follows:

1.     I am an attorney licensed to practice law in the State of Illinois and am a principal of Foote, Mielke, Chavez & O'Neil, LLC ("Foote Mielke"), one of the counsel for plaintiffs in this action. I submit this declaration is support of Plaintiffs' Motion for (1) An Award of Attorneys' Fees, (2) Reimbursement of Costs and Expenses, and (3) Incentive Awards. I make this declaration of my own personal knowledge, information, and belief and, and if called upon to do so, could and would competently testify as set forth herein.

2.     My firm is one of the counsel for plaintiffs in this case. Foote Mielke and I are highly experienced in handling complex plaintiff-side litigation, including class actions. A copy of our firm resume, summarizing its attorneys' backgrounds and experience, is attached hereto as Exhibit A.

3.     Under the direction of Class Counsel, my firm has been involved in various key tasks and activities on behalf of plaintiffs and the settlement class during the course of this litigation. This work included factual research, litigation strategy, work with experts and extensive document review.

4.     These litigation efforts discussed above on behalf of plaintiffs and the settlement class can be allocated and categorized as follows:

| Category | Hours |
|---|---|
| Identifying and Communicating with Plaintiffs | 0.5 |
| Document Review | 1496.8 |
| Investigations and Factual Research | 64.5 |
| Written Discovery | 46.0 |
| Depositions | 100.4 |
| Pleadings, Briefs, and Pretrial Motions | 42.0 |
| Experts | 113.7 |
| Court Appearances | 16.8 |
| Litigation Strategy and Analysis | 72.2 |
| Class Certification | 6.1 |

Declaration of Robert M. Foote in Support of Plaintiffs' Motion for (1) An Award of Attorneys' Fees, (2) Reimbursement of Costs and Expenses, and (3) Incentive Awards
Case No. 08-cv-03369-EJD

1

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

| | |
|---|---|
| Settlement | 37.1 |
| Administrative | 1.2 |
| **Total** | **1997.3** |

5.    Throughout the course of this litigation, my firm maintained daily, contemporaneous billing records documenting all time spent in increments of one-tenth of an hour, including tasks performed and expenses incurred in this matter. Based upon my review of my firm's timekeeping records, Foote Mielke has expended 1997.3 hours prosecuting this litigation since its inception through February 28, 2017. Multiplied by current hourly billing rates, Foote Mielke has accrued a total lodestar of $1,081,585.00. These figures do not include any time spent in connection with this motion for an award of attorneys' fees or any time that may still be incurred by my firm in connection with settlement approval and final resolution of this action. Expense items are billed separately and are not duplicated in my firm's lodestar.

6.    Additionally, in connection with this motion, Class Counsel—Schubert Jonckheer & Kolbe LLP—has reviewed my firm's timekeeping records and removed entries for work performed that was not directly related to tasks specifically requested or assigned by Class Counsel, that was not otherwise directly necessary for the effective prosecution and resolution of the case, or that was potentially duplicative of work performed by others.  For instance, time records in which attorneys generally read and reviewed court filings (when not tasked with a specific assignment in connection with those filings) are not included in my firm's total 1997.3 hours discussed above. Additionally, billing records for work performed prior to the Court's February 25, 2009 Order consolidating the various related underlying actions (Dkt. 40) are not included. The time reported by my firm herein was incurred for the benefit of plaintiffs and the settlement class, and I believe it was reasonably necessary for the effective prosecution and resolution of this case. Those records have been provided to Class Counsel, and I have authorized Class Counsel to lodge them for inspection, if so ordered by the Court.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

Declaration of Robert M. Foote in Support of Plaintiffs' Motion for (1) An Award of Attorneys' Fees, (2) Reimbursement of Costs and Expenses, and (3) Incentive Awards
Case No. 08-cv-03369-EJD

2

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

7.     The total hours and lodestar of the attorneys, paralegals, and other staff of my firm expended in pursuing the claims in this action, applying the framework discussed above, are summarized as follows[1]:

| Name | Title / Status | Hours | Rate | Lodestar |
|---|---|---|---|---|
| Robert Foote | Partner | 79.3 | $850 | $67,405.00 |
| Kathleen Chavez | Partner | 68.2 | $750 | $51,150.00 |
| Craig Mielke | Partner | 21.6 | $650 | $14,040.00 |
| Peter Currie | Senior Associate | 8.8 | $600 | $5,280.00 |
| Matt Herman | Senior Associate | 158.4 | $550 | $87,120.00 |
| Alex Caron | Associate | 915.9 | $350 | $320,565.00 |
| Michael D. Wong | Associate | 56.3 | $350 | $19,705.00 |
| Stephen Fung | Associate | 0.7 | $350 | $245.00 |
| Steve Arpaia | Consulting Counsel | 688.1 | $750 | $516,075.00 |
| **Totals** | | **1997.3** | | **$1,081,585.00** |

8.     Foote Mielke's hourly billing rates are fair, reasonable, and in line with comparable law firms. These rates are the usual and customary rates charged for each individual in all of our cases. Numerous other courts have approved Foote & Mielke's rates in other class actions and other matters, including: *In Re Groupon Marketing and Sales Practice Litigation*, No. 3:11-md-02238-DMSRBB, Southern District of California, Hon. Dana M. Sabraw (consumer class); *Burns vs. IFDA Services, et al.*, No. 3:09-cv-00390-GPM Southern District of Illinois, Hon. G. Patrick Murphy (consumer class); *Otero v. Dart, et al.*, No. 1:12-cv-03148, Northern District of Illinois, Hon. Amy St. Eve (class on behalf detained individuals) (approving rates $850/hour for Robert Foote, $750/hour for Kathleen Chavez, $750/hour for Craig Mielke, $550/hour for Peter Currie, $550/hour for Matthew Herman and $350/hour for associate time).

[1]     The hourly rate shown for any attorney or paralegal who: (a) is no longer employed by Foote & Mielke or (b) has been promoted, reflects the last rate that applied at the time of their employment in that position.

Declaration of Robert M. Foote in Support of Plaintiffs' Motion for (1) An Award of Attorneys' Fees, (2) Reimbursement of Costs and Expenses, and (3) Incentive Awards
Case No. 08-cv-03369-EJD

3

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

9.     The expenses my firm incurred in litigating this action are reflected in the books and records of my firm. These books and records are prepared from expense vouchers, invoices, receipts, check records, and other source materials, and accurately reflect the expenses incurred. My firm's expense records are available for inspection by the Court if necessary.

10.     My firm incurred a total of $91,316.90 in unreimbursed expenses, all of which were reasonable and necessary for the prosecution of this litigation. This amount does not include the various assessment payments Foote & Mielke made to Class Counsel during the action for common litigation expenses. A summary of my firm's unreimbursed expenses by category follows below:

| Expense Category | Totals |
|---|---|
| Alternative Dispute Resolution / Mediation | $2,850.00 |
| Experts | $65,802.96 |
| FedEx | $95.44 |
| Filing Fees | $1,190.00 |
| Legal Research (PACER, Lexis, Westlaw) | $918.00 |
| Litigation Consultant Fees | $2,935.26 |
| Process Service | $75.00 |
| Telephone / Facsimile | $614.66 |
| Travel-Related Expenses | $16,835.58 |
| **Expense Totals** | $91,316.90 |

11.     Prosecution of this action has involved significant financial risk for Foote & Mielke. My firm undertook this matter solely on a contingent basis, with no assurance of any recovery, and devoted significant resources in terms of its time, energy, and efforts to the resolution of plaintiffs and the settlement class's claims. Class actions such as this are typically complex and protracted, and this case, filed in July 2008 and which involved extensive appellate practice, is not an exception. Additionally, Foote & Mielke's litigation efforts in this matter prevented my firm from pursuing other work that might well have been as or more rewarding than this action.

Declaration of Robert M. Foote in Support of Plaintiffs' Motion for (1) An Award of Attorneys' Fees, (2) Reimbursement of Costs and Expenses, and (3) Incentive Awards
Case No. 08-cv-03369-EJD

4

1
2          I declare under penalty of perjury under the laws of the United States of America that the
3    foregoing is true and correct. Executed this 2nd day of May, 2017 in Geneva, Illinois.
4
5                                                                    _____
6                                                                    Robert M. Foote
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Declaration of Robert M. Foote in Support of Plaintiffs' Motion for (1) An Award of Attorneys' Fees, (2)
Reimbursement of Costs and Expenses, and (3) Incentive Awards
Case No. 08-cv-03369-EJD

5

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

Filing # 109473655 E-Filed 06/26/2020 02:44:47 PM

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE<br><br>GOOGLE ADWORDS LITIGATION | Case No. 5:08-cv-03369-EJD<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, REIMBURSEMENT OF COSTS AND EXPENSES AND SERVICE AWARDS**<br><br>Re: Dkt. Nos. 375, 381 |

After stints in both the Ninth Circuit Court of Appeals and the United States Supreme Court, this class action concerning the misplacement of internet advertisements has resulted in a settlement between Representative Plaintiffs JIT Packaging, Inc., RK West, Inc. and Richard Oesterling (collectively, "Plaintiffs") and Defendant Google, Inc. ("Google"). The court preliminary approved the settlement in an order filed on March 9, 2017. Dkt. No. 369. Having now noticed the members of the class, Plaintiffs return for final approval and for a determination of attorneys fees, costs, and service awards. Dkt. Nos. 375, 381.

Having carefully considered the relevant pleadings, this matter's extensive litigation history and the statements of counsel from the hearing on July 27, 2017, the court has determined that final approval of the settlement is warranted. Additionally, the court will award reasonable amounts for attorneys fees, costs, expenses and service awards.

## I.   BACKGROUND

Google maintains AdWords, an auction-based program for which Google serves as an intermediary between website hosts and advertisers. Through AdWords, internet advertisers

1

Case No.: 5:08-cv-03369-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, REIMBURSEMENT OF
COSTS AND EXPENSES AND SERVICE AWARDS

United States District Court
Northern District of California

1   provide advertisements to Google and its third party website-owner partners.  Participating

2   advertisers enter variables defined by Google into the AdWords interface on Google's website,

3   including the maximum price per ad they are willing to pay and their overall budget.  They also

4   select which Google-defined categories of websites should display their ad.  AdWords then

5   utilizes an auction-based algorithm to determine the online placement and price of the ad.  Under

6   this process, advertisers during the class period did not know in advance exactly where their ads

7   would appear.

8         Advertisers paid Google each time an internet user "clicked" on their displayed ad.  The

9   price of a particular click depended on several factors, including: the maximum bids of other

10   AdWords customers for clicks based on the same search term, a "quality score" of the

11   advertisement, and a "Smart Pricing" discount applied to the website where the ad had been

12   placed.  Google created and instituted Smart Pricing, an internally-calculated price adjustment, to

13   adjust the advertiser's bids to the same levels that a "rational advertiser" would bid if the rational

14   advertiser had sufficient data about the performance of ads on each website.  Smart Pricing is a

15   ratio calculated by dividing the conversion rate for the lower-quality website by the conversion

16   rate for the same ad on google.com.

17         During the class period, an advertiser using AdWords could request that its ads appear on

18   "Search Feed" sites (such as search result pages), "Content Network" sites (such as well-known

19   news providers), or both.  However, other categories of websites did not appear in the AdWords

20   registration process: "parked domains" (generic pages without actual content) and error pages

21   (pages that appear when an internet user inputs information other than a legitimate web address

22   into a browser).  Even though Google did not disclose these ostensibly lower-quality websites

23   during the AdWords registration process, Plaintiffs allege that AdWords ads appeared on both

24   parked domains and error pages.

25         Plaintiffs filed a Third Amended Complaint on November 29, 2010 (Dkt. No. 166), which

26   became the operative pleading when the court denied Google's motion to dismiss.  Dkt. No. 235.

27                                                                    2

Case No.: 5:08-cv-03369-EJD
28   ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, REIMBURSEMENT OF
COSTS AND EXPENSES AND SERVICE AWARDS

Plaintiffs allege that Google misled advertisers in violation of California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200 et seq., and the False Advertising Law ("FAL"), Business and Professions Code § 17500 et seq., by failing to disclose the placement of AdWords ads on parked domains and error pages. The proposed class is defined as:

> All persons or entities located within the United States who, from July 11, 2004 through March 31, 2008, had an AdWords account with Google and were charged for clicks on advertisements appearing on parked domains and/or error pages.

The court denied Plaintiffs' motion for class certification (Dkt. No. 315), which decision the Ninth Circuit reversed. Dkt. No. 343. The Ninth Circuit also denied Google's ensuing motion for panel rehearing and rehearing en banc. Dkt. No. 346. Google then filed a petition for writ of certiorari in the Supreme Court, which was denied. Dkt. No. 350. The Ninth Circuit's mandate followed on June 8, 2016. Id. The parties notified the court of the settlement on December 12, 2016. Dkt. No. 357. The court held a preliminary approval hearing on March 9, 2017, and granted the motion that same day. Dkt. Nos. 369, 370. These motions followed.

## II.   LEGAL STANDARD

A class action may not be settled without court approval. Fed. R. Civ. P. 23(e). When the parties to a putative class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

"Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the final approval stage, the primary inquiry is whether the proposed settlement "is fundamentally fair, adequate, and reasonable." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). Having already completed a preliminary examination of the agreement, the court reviews it again, mindful that the law favors

United States District Court
Northern District of California

1    the compromise and settlement of class action suits.  See, e.g., Churchill Village, LLC. v. Gen.

2    Elec., 361 F.3d 566, 576 (9th Cir. 2004); Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276

3    (9th Cir. 1992); Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982).

4    Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of

5    the trial judge because he [or she] is exposed to the litigants and their strategies, positions, and

6    proof." Hanlon, 150 F.3d at 1026.

7    **III.    DISCUSSION**

8        **A.    Class Certification**

9        The Federal Rules of Civil Procedure describe four preliminary requirements for class

10   certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.

11   See Fed. R. Civ. P. 23(a)(1)-(4).   If these are satisfied, the court must then examine whether the

12   requirements of Rule 23(b)(1), (b)(2), or (b)(3) are similarly satisfied.   Wal-Mart Stores, Inc. v.

13   Dukes, 564 U.S. 338, 345-46 (2011).

14       The Rule 23 requirements are more than "a mere pleading standard." Id.  The class

15   representations are subjected to a "rigorous analysis" which compels the moving party to

16   "affirmatively demonstrate . . . compliance with the rule - that is, he must be prepared to prove that

17   there are in fact sufficiently numerous parties, common questions of law or fact, etc." Id.

18       The court previously found the proposed class satisfied Rule 23(a), and developments

19   since preliminary approval support this finding.  The numerosity requirement is easily satisfied

20   because the class has 1.14 million members.  See Int'l Molders' & Allied Workers' Local 164 v.

21   Nelson, 102 F.R.D. 457, 461 (N.D. Cal. 1983) ("[W]here the number of class members exceeds

22   forty, and particularly where class members number in excess of one hundred, the numerosity

23   requirement will generally be found to be met.").   The commonality requirement is satisfied

24   because the resolution of the following question "will resolve an issue that is central to the validity

25   of each one of the claims in one stroke": whether Google's alleged omissions were misleading to a

26   reasonable AdWords customer? Wal-Mart, 564 U.S. at 350.  The typicality requirement is

27                                           4

28   Case No.: 5:08-cv-03369-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, REIMBURSEMENT OF
COSTS AND EXPENSES AND SERVICE AWARDS

United States District Court
Northern District of California

1    satisfied because Plaintiffs' claims arise out of the same conduct as those of the class; specifically,

2    Google's alleged failure to disclose the placement of advertisements on parked domains and other

3    less desirable websites. See Hanlon, 150 F.3d at 1020 (explaining that "representative claims are

4    typical if they are reasonably co-extensive with those absent class members; they need not be

5    substantially identical"). The adequate representation requirement is satisfied because there is no

6    evidence of a conflict of interest between Plaintiffs or Plaintiffs' counsel and the class, and

7    Plaintiffs' counsel has adequately demonstrated a motivation to prosecute this case vigorously.

8    See id.

9         Nor has anything changed with respect to Rule 23(b)(3) since, in the court's view, the

10   Ninth Circuit determined the predominance requirement was satisfied for this case. See Pulaski &

11   Middleman v. Google, Inc., 802 F.3d 979, 990 (9th Cir. 2015).

12        Since a sufficient showing has been made as to all of the Rule 23 requirements, conditional

13   class certification will continue for final approval.

14        **B.    Notice Plan and Settlement Administration**

15        Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances,

16   including individual notice to all members who can be identified through reasonable effort." As to

17   the content of notices, it must explain in easily understood language the nature of the action,

18   definition of the class, class claims, issues and defenses, ability to appear through individual

19   counsel, procedure to request exclusion, and the binding nature of a class judgment. Fed. R. Civ.

20   P. 23(c)(2)(B).

21        Here, the court approved a notice plan comprised by the following: (1) direct email notice

22   to settlement class members, (2) postcard notices to settlement class members whose emails were

23   returned or not opened, (3) a press release announcing the settlement, and (4) a dedicated website

24   and informational toll free number. The court also approved Analytics Consulting, LLC as the

25   settlement administrator. To effectuate the plan, Google provided a list of class members used by

26   the Settlement Administrator to send an initial round of email notices. The Settlement

27

28

United States District Court<br>Northern District of California

5

Case No.: 5:08-cv-03369-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, REIMBURSEMENT OF
COSTS AND EXPENSES AND SERVICE AWARDS

United States District Court
Northern District of California

1   Administrator then sent a second round of emails (830,294) to class members it determined had

2   not opened the original message.  A third round of emails (642,312) were sent to class members

3   who had not filed claims before the deadline.

4        Postcard notices (209,761) were sent to class members whose emails were returned.  The

5   parties also authorized the Settlement Administrator to send postcard notices to class members

6   who had not opened the original email, though such notice was not specifically authorized by the

7   preliminary approval order.  In sum, 725,464 postcard notices were mailed.

8        Additionally, the Settlement Administrator sent individualized letters (1,434) to class

9   members whose AdWords profiles were associated with over five accounts.  As a result of the

10  plan, the Settlement Administrator estimates that 89% of class members received some form of

11  direct notice.

12       All of the notices referred class members to the website maintained by the Settlement

13  Administrator.  A press release was also provided to PR Newswire and distributed to 12,000

14  traditional media and 2,500 online media outlets.

15       The court reaffirms the notice plan satisfies Rule 23(c)(2)(B) and finds the Settlement

16  Administrator has fully and properly implemented the notice plan.

17       **C.   Fairness Determination**

18        The court now reexamines the fairness of the proposed settlement, this time with the

19  benefit of notice to the class.

20       The details of a class action settlement are scrutinized to ensure they are "fair, reasonable,

21  and adequate."  Fed. R. Civ. P. 23(e)(1)(C).  The burden to demonstrate fairness falls upon the

22  proponents of the settlement.  Staton, 327 F.3d at 959; Officers for Justice, 688 F.2d at 625.  To

23  assess the fairness of the proposed settlement, the court considers eight factors derived from

24  Churchill Village, LLC v. General Electric, 361 F.3d 566, 575 (9th Cir. 2004), also known as the

25  "Churchill factors":

26            (1) the strength of the plaintiff's case; (2) the risk, expense,

27

28

Case No.: 5:08-cv-03369-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, REIMBURSEMENT OF
COSTS AND EXPENSES AND SERVICE AWARDS

United States District Court
Northern District of California

1    complexity, and likely duration of further litigation; (3) the risk of
2    maintaining class action status throughout the trial; (4) the amount
    offered in settlement; (5) the extent of discovery completed and the
    stage of the proceedings; (6) the experience and view of counsel; (7)
3    the presence of a governmental participant; and (8) the reaction of
    the class members to the proposed settlement.

4    In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 944 (9th Cir. 2015).

5       When settlement occurs before formal class certification, settlement approval requires a

6 higher standard of fairness in order to ensure that class representatives and their counsel do not

7 secure a disproportionate benefit at the expense of the class. Lane v. Facebook, Inc., 696 F.3d

8 811, 819 (9th Cir. 2012).

9       Here, the parties proposed a settlement with the following components:

10    •     Google will pay the total amount of $22.5 million, which will constitute the entirety

11 of the settlement fund. All payments will be made from this fund, including: (1) settlement

12 payments to class members, (2) attorney fees and costs awards, (3) incentive awards to

13 named plaintiffs, and (4) administration costs, including the costs due to the Claims

14 Administrator.

15    •     According to the Settlement Agreement, the entire net settlement fund will be

16 distributed to class members who submit valid claims. If the total amount of valid claims

17 amounts to less than the net settlement fund, claimants will receive 100% of the amounts

18 of the their claims. If the total amount of valid claims is more than the net settlement fund,

19 payments will be reduced on a pro rata basis. No settlement payment will be made,

20 however, if the total amount of the payments is less than $1.00.

21    •     If, after distributions, there remains a residual amount of $100,000 or more in the

22 fund, it will be distributed as an account credit "to Settlement Class members who did not

23 submit Claims and have an Active Account, on a pro rata basis in accordance with the total

24 amount they spent on Google AdWords ads that were placed on parked domains and error

25 pages during the Settlement Class Period." However, no payment will be made that is less

26 than $5.00.

27                                           7
   Case No.: 5:08-cv-03369-EJD
28 ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
   SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, REIMBURSEMENT OF
   COSTS AND EXPENSES AND SERVICE AWARDS

United States District Court
Northern District of California

1    •    If the residual amount in the fund is less than $100,000, it will be distributed to the

2    cy pres recipients.  Plaintiffs propose the Public Justice Foundation and Public Counsel as

3    the cy pres recipients.

4    •    As to particular payments, Plaintiffs intended to request incentive awards for the

5    representative plaintiffs of $5,000 each, subject to court approval.  Plaintiffs also estimated

6    that administrative costs would be $280,000.

7    •    Plaintiffs' counsel intended to request attorneys fees and costs not to exceed $6.5

8    million and $700,000, respectively.

9    The court previously weighed the relevant factors and found the proposed settlement to be

10   fair, reasonable and adequate.  Doing so again, the court finds that, on balance, the factors still

11   weigh in favor of the settlement.

12   First, the settlement was reached after extensive motion practice and discovery, as well as

13   subsequent to an appellate proceeding that ended only when the United States Supreme Court

14   denied certiorari.

15   Second, the parties engaged the services of an experienced private mediator to assist them

16   in their efforts to resolve this action at arms-length, a fact which undermines the possibility of

17   collusion between Plaintiffs' counsel and Google.

18   Third, Plaintiffs' counsel, which consists of experienced class action litigators, support the

19   settlement.

20   Fourth, it is apparent the parties thoughtfully considered the risk, expense and complexity

21   of further litigation in reaching a compromise.  Indeed, as Plaintiffs point out, Google indicated it

22   would seek decertification of the class and would likely appeal any result in Plaintiffs' favor.

23   Thus, settlement saves the parties the burden of funding what could have been protracted litigation

24   in the trial and appellate courts for many more years.  In addition, the amount of the settlement and

25   the manner of its distribution are adequate in light of the claims and the strong potential for

26   additional proceedings.

27
8

Case No.: 5:08-cv-03369-EJD

28   ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, REIMBURSEMENT OF
COSTS AND EXPENSES AND SERVICE AWARDS

United States District Court
Northern District of California

1    The reaction of class members, however, is not necessarily positive as a matter of numbers.

2    Though the small amount of opt-outs and objections in relation to the number of class members is

3    noted, the submission of only 81,479 timely claims and 71 late claims (which the parties agree

4    should be honored) out of a class of 1,147,404 members amounts to a participation rate of only

5    7%. This is below the customary participation rate for consumer class actions, as recently

6    observed by the Ninth Circuit. See Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1130 (9th Cir.

7    2017) ("It is not unusual for only 10 or 15% of the class members to bother filing claims.").

8    However, the 7% participation rate is not fatal to the settlement. As indicated by

9    Plaintiffs' counsel and the court at the final approval hearing, several factors could explain a low

10   rate, including the fact this action refers to conduct that occurred between nine and thirteen years

11   ago. Importantly, the pleadings do not disclose any reason to find the participation rate was

12   affected by a failure of notice, given the successful implementation of the notice plan and the

13   percentage of class members exposed to the information. Moreover, the low number of claims is

14   outweighed by the other Churchill factors, which taken together show this settlement falls within a

15   reasonable range of possible settlements, after giving "proper deference to the private consensual

16   decision of the parties" to reach an agreement rather than to continue litigating. Hanlon, 150 F.3d

17   at 1027; see In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

18   Because the settlement remains fair adequate and reasonable, the court grants final

19   approval.

20   **D.    Attorneys Fees, Costs, Expenses and Service Awards**

21   **i.    Attorneys Fees**

22   When attorneys fees and costs are requested by counsel for the class, "courts have an

23   independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the

24   parties have already agreed to an amount." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d

25   935, 941 (9th Cir. 2011). "In a diversity action such as this, federal courts apply state law both to

26   determining the right to fees and the method of calculating them." Emmons v. Quest Diagnostics

27
28   Case No.: 5:08-cv-03369-EJD
     ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
     SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, REIMBURSEMENT OF
     COSTS AND EXPENSES AND SERVICE AWARDS

1    Clinical Labs, Inc., No. 1:13-cv-00474-DAD-BAM, 2017 WL 749018, at *7, 2017 U.S. Dist.

2    LEXIS 27249 (E.D. Cal. Feb. 27, 2017) (citing Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047

3    (9th Cir. 2002); Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1478 (9th Cir. 1995)).

4            The California Supreme Court has clarified that "when an attorney fee is awarded out of a

5    common fund preserved or recovered by means of litigation, the award is not per se unreasonable

6    merely because it is calculated as a percentage of the common fund." Laffitte v. Robert Half Int'l

7    Inc., 1 Cal. 5th 480, 486 (2016).  In doing so, the Court joined "the overwhelming majority of

8    federal and state courts in holding that when class action litigation establishes a monetary fund for

9    the benefit of the class members, and the trial court in its equitable powers awards class counsel a

10   fee out of that fund, the court may determine the amount of a reasonable fee by choosing an

11   appropriate percentage of the fund created." Id. at 503.  The Court also suggested considerations

12   of the risks and potential value of the litigation, the contingency, novelty, and difficulty of the

13   case, the skill shown by counsel, and a lodestar cross-check were all appropriate means of

14   discerning an appropriate percentage award in a common fund case. Id. at 504, 506.  Notably,

15   however, the Court did not adopt a generally applicable "benchmark" percentage for common

16   fund fee awards, though it cited other courts that do. Id. at 495 (observing benchmark fees

17   percentages used in the Ninth and Eleventh Circuits).

18           The Ninth Circuit has recognized that "courts typically calculate 25% of the fund as the

19   'benchmark' for a reasonable fee award, providing adequate explanation in the record of any

20   'special circumstances' justifying a departure." In re Bluetooth, 654 F.3d at 941.  The Ninth

21   Circuit also recognizes factors similar to those of the California Supreme Court for determining

22   the appropriateness of a fee award: "(1) the results achieved; (2) the risk of litigation; (3) the skill

23   required and quality of work; (4) the contingent nature of the fee and the financial burden carried

24   by the plaintiffs; and (5) awards made in similar cases." Tarlecki v. bebe Stores, Inc., No. C 05-

25   1777 MHP, 2009 WL 3720872, at *4, 2009 U.S. Dist. LEXIS 102531 (N.D. Cal. Nov. 3, 2009).

26           "Though courts have discretion to choose which calculation method they use, their

                                                          10

27   Case No.: 5:08-cv-03369-EJD
     ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
28   SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, REIMBURSEMENT OF
     COSTS AND EXPENSES AND SERVICE AWARDS

United States District Court
Northern District of California

1    discretion must be exercised so as to achieve a reasonable result." In re Bluetooth, 654 F.3d at

2    941. Because the California Supreme Court has recently approved the percentage calculation for

3    common fund cases like this one, the court will utilize that method along with a lodestar cross-

4    check to calculate the appropriate amount of attorneys fees.

5                    **a. Percentage of the Fund**

6              Plaintiffs' counsel seeks a fee award of $6.5 million, which amounts to 28.8% of the

7    settlement fund. Several of the factors weigh in counsel's favor. Counsel undertook substantial

8    risk by agreeing to litigate the claims on a purely contingent basis knowing that Google would put

9    up a strong and serious defense. To that end, counsel has carried the financial burden of this case

10   for the past eight years without compensation.

11             Additionally, this case required notable legal acumen given the complex class certification

12   issues, a Ninth Circuit appeal resulting in a published opinion, and a certiorari petition to the

13   United States Supreme Court. Additionally, class counsel points out the amount requested is

14   consistent with that awarded in other similar cases decided under federal and California law.

15             But there is one potentially negative factor. Though the amount of the settlement fund is

16   significant, the 7% participation rate is not. As already stated, there are several possible

17   explanations for the low rate, most of which do not reflect unfavorably on counsel's performance.

18   But another possibility, however unlikely, is that class members were not motivated to participate

19   by the settlement result itself.

20             Applying the relevant factors provided by the California Supreme Court and the Ninth

21   Circuit to the settlement achieved in this case, the court deems it fair, reasonable and adequate to

22   award counsel an amount representing 27% of the settlement fund, or $6,075,000. The court finds

23   this amount properly accounts for the risk involved, the significant amount of work done, and the

24   lower-than-typical participation rate.

25                    **b. Lodestar Cross-Check**

26             Both the Ninth Circuit and the California Supreme Court encourage trial courts "to guard

27                                                                    11

28   Case No.: 5:08-cv-03369-EJD
     ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
     SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, REIMBURSEMENT OF
     COSTS AND EXPENSES AND SERVICE AWARDS

United States District Court
Northern District of California

United States District Court<br>Northern District of California

1  against an unreasonable result" by cross-checking attorneys fees calculations against a second

2  method.  In re Bluetooth, 654 F.3d at 944; accord Laffitte, 1 Cal. 5th at 504.  Since a percentage

3  award might be reasonable in some cases but arbitrary in cases involving an extremely large

4  settlement fund, the purpose of the comparison is to ensure counsel is not overcompensated.  See

5  In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 109 F.3d 602, 607 (9th

6  Cir. 1997); see also Laffitte, 1 Cal. 5th at 504 ("If a comparison between the percentage and

7  lodestar calculations produces an imputed multiplier far outside the normal range, indicating that

8  the percentage fee will reward counsel for their services at an extraordinary rate even accounting

9  for the factors customarily used to enhance a lodestar fee, the trial court will have reason to

10  reexamine its choice of a percentage.").

11        Here, Plaintiffs' counsel calculates a total lodestar figure of $7,002,126 for 12,496.6 billing

12  hours from 17 lawyers, paralegals and law clerks.  The ranges for hourly rates are as follows: $600

13  to $900 for partners and "of counsel" attorneys, $350 to $520 for associates and "project

14  attorneys," $350 for a law clerk, $190 to $220 for paralegals.  Altogether, the average hourly rate

15  for all work performed is $560.

16        Plaintiffs' counsel has provided sufficient support for its proposed lodestar calculation.

17  The amount of hours and other costs attributed to this case are appropriate in light of the efforts

18  required to litigate and ultimately engage in a lengthy appellate and then settlement process.  In

19  addition, the hourly rates fall within the higher range of those historically approved in this district.

20  In re Magsafe Apple Power Adapter Litig., No. 5:09-cv-01911-EJD, 2015 WL 428105, at *12,

21  2015 U.S. Dist. LEXIS 11353 (N.D. Cal. Jan. 30, 2015).  Accordingly, the lodestar cross-check

22  confirms the reasonableness of the percentage-based calculation since it exceeds the latter amount.

23        **ii.  Costs**

24        Plaintiffs' counsel seeks reimbursement of $700,000 for costs, which amount they

25  disclosed in the application for preliminary approval.  Since the amount of incurred costs is more

26  than the request, the court finds that $700,000 is fair, adequate and reasonable.

12

27  Case No.: 5:08-cv-03369-EJD

28  ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, REIMBURSEMENT OF
COSTS AND EXPENSES AND SERVICE AWARDS

### iii.   Administrative Expenses

Plaintiffs' counsel seeks approval of $484,000 in total projected expenses charged by the Settlement Administrator for implementing the notice plan and coordinating claims and payments. Notably, counsel originally estimated administrative costs of $280,000.

Though the request for expenses is well above the amount disclosed during preliminary approval proceedings, the court understands that counsel authorized additional, previously-unanticipated individualized notices to class members with multiple AdWords accounts. Because these notices can account for the increase, and because they were undertaken for the benefit of the class, the court will approve the request for $484,000 in administrative expenses.

### iv.   Incentive Awards

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton, 327 F.3d at 977. To determine the appropriateness of incentive awards a district court should use "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions ... the amount of time and effort the plaintiff expended in pursuing the litigation ... and reasonabl[e] fear[s of] workplace retaliation." Id. (internal quotation marks omitted).

Here, the Settlement Agreement provides that Plaintiffs may receive incentive awards of up to $5,000 each. In this district, that amount is presumptively reasonable. Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau, No. C 07-00362 MHP, 2009 WL 3562871, at *4-5, 2009 U.S. Dist. LEXIS 101586 (N.D. Cal. Oct. 27, 2009). Since Plaintiffs assumed the responsibilities and burdens of acting as representatives in this lawsuit, including providing documents, verifying allegations, and consulting with counsel, the court will approve the $5,000 incentive awards as reasonable.

## IV.   OBJECTION

The court received one written objection on behalf of John J Keady Transportation

Case No.: 5:08-cv-03369-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, REIMBURSEMENT OF
COSTS AND EXPENSES AND SERVICE AWARDS

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

1   Consulting.  Generally, objectors to a class action settlement bear the burden of proving any

2   assertions they raise in opposition to approval.  United States v. Oregon, 913 F.2d 576, 581 (9th

3   Cir. 1990).

4          Keady has not satisfied this burden.  The objection primarily takes issue with information

5   provided on the postcard notice, and seems to protest any obligation to investigate whether he was

6   injured as a result of Google's conduct.  But these sorts of questions could have been answered by

7   following the instructions listed on the notice, visiting the dedicated website or contacting the

8   Settlement Administrator.  In short, this objection does not present a viable reason to reject the

9   settlement and is overruled on that basis.

10  **V.   CONCLUSION AND ORDER**

11         Based on the preceding discussion, the Motion for Final Approval of Class Action

12  Settlement (Dkt. No. 381) is GRANTED.

13         The Motion for Attorneys Fees, Reimbursement of Costs and Expenses and Service

14  Awards (Dkt. No. 375) is also GRANTED as follows:

15         1.      The court approves attorneys fees of $6,075,000 to Plaintiffs' counsel.

16         2.      The court approves costs of $700,000 to Plaintiffs' counsel.

17         3.      The court approves administrative expenses of $484,000.

18         4.      The court approves incentive awards of $5,000 for Plaintiffs.

19

20         **IT IS SO ORDERED.**

21  Dated:  August 7, 2017

22                                          _____

23                                          EDWARD J. DAVILA
                                            United States District Judge
24

25

26

27                                          14
    Case No.: 5:08-cv-03369-EJD
28  ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
    SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, REIMBURSEMENT OF
    COSTS AND EXPENSES AND SERVICE AWARDS

Filing # 109473655 E-Filed 06/26/2020 02:44:47 PM

# CHASE *for* BUSINESS

Printed from Chase for Business

## Deposit Overview

| Post date | Total deposit amount | # of checks deposited |
|-----------|---------------------|----------------------|
| Oct 4, 2017 | $310,000.00 | 1 |

## Deposit Slip

## Check



| Check # | Check amount | Account # | Routing # |
|---------|-------------|-----------|-----------|
| 1276 | $310,000.00 | 1890705930 | 121137522 |

JPMorgan Chase Bank, N.A. Member FDIC          ©2019 JPMorgan Chase & Co.          Equal Opportunity Lender ⌂

Filing # 109473655 E-Filed 06/26/2020 02:44:47 PM

# Schubert Jonckheer & Kolbe LLP

——————————————— Attorneys at Law

Robert C. Schubert                                             *Of Counsel*
Willem F. Jonckheer                                          Miranda P. Kolbe
Dustin L. Schubert
Noah M. Schubert
———
Kathryn Y. Schubert

September 6, 2017

<u>Via FedEx</u>

Stephen Arpaia, Esq.
SJA Legal, LLC
11479 Sea Grass Circle
Boca Raton, Florida 33498

> Re:    <u>*In re Google AdWords Litigation*</u> (N.D. Cal. Case No. 08-cv-3369-EJD)

Dear Mr. Arpaia:

I am pleased to enclose our trust account check in the amount $310,000.00.

This award represents the amount of attorneys' fees which in my opinion are fair in consideration of your contribution to the ultimate result, based on the complexity of tasks performed, the extent to which the tasks were delegated by lead counsel, the reasonableness of the hourly rates for the work undertaken, and any contributions to the litigation fund.

This payment represents full payment for you and your firm in connection with this matter, and your negotiation of the check represents acknowledgment of full payment.

Very truly yours,

Robert C. Schubert

RCS:ds

Filing # 109473655 E-Filed 06/26/2020 02:44:47 PM

**SCHUBERT JONCKHEER & KOLBE LLP**
**IOLTA ACCOUNT**
THREE EMBARCADERO CENTER, SUITE 1650
SAN FRANCISCO, CA 94111

1276

COMERICA BANK
90-3752/1211

9/6/2017

PAY TO THE
ORDER OF   SJA Legal, LLC

$ **310,000.00

Three Hundred Ten Thousand and 00/100*************************************************************** DOLLARS

SJA Legal, LLC

MEMO   Google AdWords Litigation (see reverse)

⑈001276⑈ ⑆121137525⑆ ⑈890705930⑈

©2005 INTUIT INC.# 336  1-800-433-8810